T.C. Memo. 2005-73


UNITED STATES TAX COURT


MICHAEL J. DOWNING AND SANDRA M. DOWNING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 12108-98.                    Filed April 6, 2005.


        R determined that (1) substantial amounts of income
from P-H's plumbing business had not been reported on Ps'
separate income tax returns; (2) Ps' marriage contract did
not have the effect of stopping application of Louisiana's
usual community property laws for Federal income tax
purposes; and (3) each P is liable for the fraud penalty
(alternatively, the negligence penalty) for both years in
issue.  In <u>Downing v. Commissioner</u>, T.C. Memo. 2003-347 we
held that (1) the marriage contract did prevent income-
splitting, and so P-W had no deficiency and no fraud (or
negligence) penalty; (2) substantial amounts of income were
omitted from P-H's tax return; and (3) P-H is liable for
civil fraud.

        P-W moves for an award of costs.

_____

        [*] This opinion supplements our previously filed opinion in
<u>Downing v. Commissioner</u>, T.C. Memo. 2003-347, hereinafter
sometimes referred to as Downing I.

1.  <u>Held</u>:  R's position on income-splitting was substantially justified; P-W was not prevailing party on that issue.  Sec. 7430(c)(4)(B)(i), I.R.C. 1986.

2.  <u>Held</u>, <u>further</u>,  R's position on P-W's civil fraud penalties was not substantially justified, but R's alternative position on P-W's negligence penalties was substantially justified; P-W was prevailing party on that issue to extent of excess of fraud penalties over negligence penalties.  Sec. 7430(c)(4)(A), I.R.C. 1986.

3.  <u>Held</u>, <u>further</u>,  Under the circumstances of the instant case, Ps' motion to reopen the record did not unreasonably protract the proceedings.  Sec. 7430(b)(3), I.R.C. 1986.

4.  <u>Held</u>, <u>further</u>,  Amounts of costs apportioned, generally in accordance with ratio of (a) excess of P-W's determined fraud penalties over P-W's determined negligence penalties, to (b) other determined amounts.

5.  <u>Held</u>, <u>further</u>,  Ps' settlement offer was not a "qualified offer" because it failed statutory designation requirement.  Sec. 7430(g)(1)(C), I.R.C. 1986.


<u>John S. Ponseti</u>, for petitioners.

<u>Susan S. Canavello</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


CHABOT, <u>Judge</u>:  This matter is before us on the motion of petitioner Sandra M. Downing[1] (hereinafter sometimes referred to as Sandra) for an award of reasonable litigation and

---

[1] Petitioner Michael J. Downing (hereinafter sometimes referred to as Michael) is not a party to this motion, but he nevertheless remains a party in the case.  See <u>DeLucia v. Commissioner</u>, 87 T.C. 804, 811 (1986).

administrative costs pursuant to section 7430[2] and Rule 231.[3]

The issues for decision are:

(1) Whether Sandra is the "prevailing party" for purposes of section 7430--in particular:

(A) Whether respondent established that respondent's position was "substantially justified", within the meaning of section 7430(c)(4)(B)(i), or

(B) Whether Sandra submitted a "qualified offer" withing the meaning of section 7430(g);

(2) Whether Sandra unreasonably protracted the proceedings; and

(3) Whether Sandra's claimed costs are unreasonable or excessive.

We reach issues (2) and (3) only if Sandra prevails, in whole or in part, on issue (1).

In her amendment to the motion, Sandra requested that we "schedule an evidentiary hearing on this motion if deemed necessary or if the Respondent and the Petitioners are unable to

---

[2] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced at the time the petition in the instant case was filed.

[3] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

come to an agreement". Respondent has not requested a hearing. The Court ordered the parties to confer in accordance with Rule 232(c) and to thereafter file status reports. The parties' separate status reports did not indicate a need for a hearing. Neither side's motion papers stated reasons why the motion cannot be disposed of without a hearing. See Rules 231(b)(8), 232(b) (final flush language). We conclude that this motion may properly be resolved without an evidentiary hearing. See Rule 232(a)(2).

<u>Background</u>

The underlying facts of this case are set out in detail in <u>Downing v. Commissioner</u>, T.C. Memo. 2003-347. We summarize the factual and procedural background briefly here, as required for our ruling on the instant motion.

At all relevant times, petitioners resided in Louisiana, a community property State. Before their marriage, petitioners entered into a marriage contract, agreeing to be separate in property. They properly filed the marriage contract in St. Tammany Parish, where they resided at the time. When they filed the petition in the instant case and during all years in issue, petitioners resided in Jefferson Parish.

In the years in issue Michael ran a plumbing business, for which Sandra did all the bookkeeping. As the business's bookkeeper, Sandra took care of its banking and billing, and

maintained records for use in tax return preparation. Petitioners filed separate tax returns for the years in issue, on which they reported only their respective incomes, without regard to Louisiana's usual community property laws.

Respondent determined, among other things, that petitioners' marriage contract did not stop the application of Louisiana's usual community property laws for Federal income tax purposes. Respondent determined deficiencies and additions to tax (fraud) against Sandra as a result of charging her with one-half of the omitted income from Michael's business.

In the notices of deficiency, respondent's determinations against Michael totaled (deficiencies plus fraud penalties) almost $65,000, and against Sandra totaled (deficiencies plus fraud penalties) more than $40,000. In the notices of deficiency, respondent determined that, if the fraud penalty was not sustained, then the accuracy-related penalty of section 6662(a) applied. In the answer, respondent narrowed this alternative to the 20-percent negligence accuracy-related penalty.

Respondent conceded at trial and on brief that, if we held petitioners' marriage contract was effective to take petitioners out of Louisiana's usual community property matrimonial regime, then Sandra would have no deficiency and no addition to tax or penalty for any year in issue. In this event, respondent

asserted alternatively, Michael would be liable for all deficiencies and additions to tax or penalties attributable to the omitted income from his business. Under this alternative (which took into account some concessions respondent had already made), respondent asserted deficiencies and penalties against Michael totaling almost $70,000.

About 1 month before the trial, petitioners submitted to respondent an offer to settle for $5,750 both petitioners' deficiencies, interest, and penalties for both years in issue. Respondent rejected this offer 1 week after it was submitted.

In Downing I, we concluded that petitioners' marriage contract was effective during the years in issue. Accordingly, we held that Sandra was not liable for any deficiency, addition to tax, or penalty for any year in issue. We also held that respondent succeeded in proving by clear and convincing evidence that Michael's business produced substantially more income than Michael reported for the years in issue, resulting in deficiencies, and that these deficiencies were due to Michael's fraud. Our determination on the marriage contract issue mooted respondent's determinations of penalties against Sandra, and so we did not make any finding as to whether Sandra's actions were fraudulent or negligent.

_____

Respondent's position as to the applicability of Louisiana's usual community property laws was substantially justified in both the court proceeding and the administrative proceeding.

Respondent's position as to Sandra's liability for fraud penalties was substantially justified in neither the court proceeding nor the administrative proceeding.  However, respondent's alternative position as to Sandra's liability for negligence penalties was substantially justified in both the court proceeding and the administrative proceeding.

Sandra did not unreasonably protract the proceeding.

In general, one-eighth of petitioners' administrative costs is attributable to the issue of Sandra's liabilities for fraud penalties in excess of negligence penalties.  In general, one-eighth of petitioners' litigation costs that were incurred before Sandra's motion for award of costs is attributable to the issue of Sandra's liabilities for fraud penalties in excess of negligence penalties.  In general, one-third of Sandra's costs for Sandra's motion for award of costs is attributable to the issue of Sandra's liabilities for fraud penalties in excess of negligence penalties.  No part of petitioners' costs for Rule 155 computations (other than to reflect our ruling on Sandra's motion for costs) is attributable to the issue of Sandra's liabilities for fraud penalties.

## Discussion

### A. In General

The Congress has provided for the awarding of litigation and administrative costs to a taxpayer who satisfies a series of requirements.  Sec. 7430.[4]

---

[4] Section 7430 provides, in pertinent part, as follows:

SEC. 7430.  AWARDING OF COSTS AND CERTAIN FEES.

(a)  In General.--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--

   (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

   (2) reasonable litigation costs incurred in connection with such court proceeding.

(b)  Limitations.--

*     *     *     *     *     *     *
   (3)  Costs denied where party prevailing protracts proceedings.--No award for reasonable litigation and administrative costs may be made under subsection (a) with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding.

*     *     *     *     *     *     *

(c)  Definitions.--For purposes of this section--

*     *     *     *     *     *     *

(continued...)

[4](...continued)

(2) Reasonable administrative costs.--The term "reasonable administrative costs" means-

(A) any administrative fees or similar charges imposed by the Internal Revenue Service, and

(B) expenses, costs, and fees described in paragraph (1)(B), except that any determination made by the court under clause (ii) or (iii) thereof shall be made by the Internal Revenue Service in cases where the determination under paragraph (4)(C) of the awarding of reasonable administrative costs is made by the Internal Revenue Service.

Such term shall only include costs incurred on or after whichever of the following is the earliest: (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(4) Prevailing party.--

(A) In general.--The term "prevailing party" means any party in any proceeding to which subsection (a) applies \* \* \*--

(i) which--

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(ii) which meets the requirements

(continued...)

---

of the 1st sentence of section
2412(d)(1)(B) of title 28, United States
Code * * *

(B) Exception if United States establishes
that its position was substantially justified.--

(i) General rule.--A party shall
not be treated as the prevailing party
in a proceeding to which subsection (a)
applies if the United States establishes
that the position of the United States
in the proceeding was substantially
justified.

\*       \*       \*       \*       \*       \*       \*

(C)  Determination as to prevailing party.--
Any determination under this paragraph as to
whether a party is a prevailing party shall be
made by agreement of the parties or--

\*       \*       \*       \*       \*       \*       \*

(ii) in the case where such final
determination is made by a court, the court.

\*       \*       \*       \*       \*       \*       \*

(E) Special rules where judgment less than
taxpayer's offer.--

(i)  In general.--A party to a court
proceeding * * * shall be treated as the
prevailing party if the liability of the
taxpayer pursuant to the judgment in the
proceeding (determined without regard to
interest) is equal to or less than the
liability of the taxpayer which would have
been so determined if the United States had
accepted a qualified offer of the party under
subsection (g).

\*       \*       \*       \*       \*       \*       \*

(continued...)

---

[4](...continued)

       (iii) Special rules.--If this subparagraph applies to any court proceeding–

    \*     \*     \*     \*     \*     \*     \*

        (II) reasonable administrative and litigation costs shall only include costs incurred on and after the date of such offer.

       (iv) Coordination.--This subparagraph shall not apply to a party which is a prevailing party under any other provision of this paragraph.

    \*     \*     \*     \*     \*     \*     \*

   (5) Administrative proceedings.--The term "administrative proceeding" means any procedure or other action before the Internal Revenue Service.

   (6) Court proceedings.--The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court \* \* \*).

   (7) Position of the United States.--The term "position of the United States" means--

     (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and

     (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of--

       (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

       (ii) the date of the notice of deficiency.

(continued...)

In general, the requirements of section 7430 are in the conjunctive; i.e., the taxpayer must satisfy each of them in order to succeed. See <u>Corson v. Commissioner</u>, 123 T.C. 202, 205-206 (2004); <u>Minahan v. Commissioner</u>, 88 T.C. 492, 497 (1987). Respondent concedes that Sandra (1) "substantially prevailed" (sec. 7430(c)(4)(A)(i)), (2) exhausted available administrative remedies (sec. 7430(b)(1)), and (3) met the net worth

---

[4](...continued)

      *     *     *     *     *     *     *

    (g) Qualified Offer.--For purposes of subsection (c)(4)--

        (1) In general.--The term "qualified offer" means a written offer which--

            (A) is made by the taxpayer to the United States during the qualified offer period

            (B) specifies the offered amount of the taxpayer's liability (determined without regard to interest);

            (C) is designated at the time it is made as a qualified offer for purposes of this section; and

            (D) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

The "qualified offer" alternative (secs. 7430(c)(4)(E) and (g)) was enacted after the petition in the instant case was filed; it applies to costs incurred after January 18, 1999. Secs. 3101(e) and (g) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, 728, 729.

requirements (subpars. (A)(ii) and (D)(ii) of sec. 7430(c)(4)). Respondent contends that (1) Sandra is not "the prevailing party" because respondent's position "was substantially justified" (sec. 7430(c)(4)(B)(i)), (2) the amount of costs Sandra claims is not reasonable (pars. (1) and (2) of sec. 7430(c)), and (3) Sandra "unreasonably protracted" the proceedings (sec. 7430(b)(3)).

We consider first whether respondent's position was substantially justified, then whether Sandra unreasonably protracted the proceedings, and then the proper allocation of allowable costs. Finally, we consider whether Sandra is allowed a recovery of any amount under the "qualified offer" provisions.

B.   Substantially Justified

To recover costs from respondent, Sandra must establish she is the "prevailing party" within the meaning of section 7430(c)(4). (As we noted in Downing I note 31, section 7491, which shifts the burden of proof to the Commissioner if the taxpayer meets certain conditions, does not apply in the instant case because the examination of petitioners' tax returns began before the effective date of section 7491.) Under section 7430(c)(4)(B)(i), Sandra shall not be treated as having satisfied the prevailing party requirement if respondent "establishes that the position of the United States in the proceeding was substantially justified." (Although the overall burden of proof as to "prevailing party" is on Sandra, the burden of proof on the "substantially justified" element is on respondent, as a result

of section 701 of Pub.L. 104-168, 110 Stat. 1452, 1463 (1996), Taxpayer Bill of Rights 2.)

Respondent contends: the Commissioner's position was substantially justified. In particular, respondent contends: (1) It was reasonable to take the position that petitioners "did not have a valid matrimonial agreement under Louisiana law"; (2) it was reasonable "to take whipsaw or inconsistent positions to protect the revenue"; and (3) it was reasonable to charge Sandra (as well as Michael) with civil tax fraud.

Sandra contends that "Respondent had no reasonable basis in fact or law to conclude [(1)] that the Marital Agreement did not exist, was invalid, or was not timely filed in St. Tammany Parish"; (2) that Louisiana law required a second filing; (3) that a 1991 Jefferson Parish filing would not satisfy any second filing requirement that there might be under Louisiana law; and (4) "that any fraud penalty existed on Petitioner's [Sandra's] tax return for either year in question."

The justification for each of respondent's positions must be separately determined. Foothill Ranch Co. Partnership v. Commissioner, 110 T.C. 94, 97 (1998).

We agree with respondent as to income-splitting. We agree with Sandra as to civil fraud penalties, to the extent they exceeded negligence penalties.

The parties focus almost entirely on the requirements as to litigation costs; we consider litigation costs first, and then administrative costs.

1.   Litigation Costs--Deficiency

Ordinarily, we identify the point at which the United States is first considered to have taken a position, and then decide whether the position, taken from that point forward, was or was not substantially justified.  Maggie Management Co. v. Commissioner, 108 T.C. 430, 442 (1997).  For purposes of the court proceedings in the instant case, the position of the United States is the position respondent took in the answer.  Id. at 442.

"Substantially justified" is defined as "justified to a degree that could satisfy a reasonable person" and having a "reasonable basis both in law and fact."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted);[5] Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg.

---

[5] Although the dispute in Pierce v. Underwood, 487 U.S. 552 (1988), arose under the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d), the relevant provisions of the EAJA are almost identical to the language of sec. 7430. Cozean v. Commissioner, 109 T.C. 227, 232 n.9 (1997). Accordingly, we consider the holding in Pierce v. Underwood, supra, to be applicable to the case before us.

Also, the "substantially justified" standard is not a departure from the reasonableness standard of pre-1986 law.  Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  Accordingly, we consider the holdings of pre-1986 law on reasonableness to be applicable to the case before us.

T.C. Memo. 1994-182.  Respondent's position may be incorrect and yet be substantially justified "if a reasonable person could think it correct".  Pierce v Underwood, 487 U.S. at 566 n.2.

Whether respondent acted reasonably in the instant case ultimately turns on the available information which formed the basis for respondent's position, as well as on the law relevant to the instant case.  Nalle v. Commissioner, 55 F.3d at 191-192; Coastal Petroleum Refiners v. Commissioner, 94 T.C. 685, 688-690 (1990).

The fact that respondent eventually loses or concedes a case does not by itself establish that respondent's position is unreasonable.  Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991)(award of litigation costs in Court of Appeals), affg. T.C. Memo. 1990-123; Swanson v. Commissioner, 106 T.C. 76, 94 (1996).  However, it is a factor that may be considered.  Nalle v. Commissioner, 55 F.3d at 192 n.7; Estate of Perry v. Commissioner, 931 F.2d at 1046.

In determining whether respondent's position was not substantially justified, the question is whether respondent knew or should have known that the Government's position was invalid at the time that respondent took the position in the litigation. Nalle v. Commissioner, 55 F.3d at 191; Coastal Petroleum Refiners v. Commissioner, 94 T.C. at 689.

In the instant case, petitioners' pleadings did not challenge respondent's determinations that Louisiana's community property laws required Michael's omitted business income to be split with Sandra.[6] The parties do not consider whether events described <u>supra</u> note 6 have any impact on whether we should judge the reasonableness of respondent's position as of respondent's answer.

Also, the parties do not focus on what respondent knew of the facts when the answer was filed, but accept the relevant matters of fact as we found them in Downing I. Thus, as to the

---

[6] In the notices of deficiency, respondent determined that Louisiana's usual community property laws applied so as to require the "splitting" of petitioners' income, including the substantial amounts that respondent determined as unreported income from Michael's business. In their joint petition, petitioners did not assign error to this community property determination. Instead, they contended that they filed amended tax returns to change their status from "Married Filing Separate" to "Married Filing Joint". In the answer, respondent admitted receiving the amended tax returns electing joint return status, but stated that those documents had not been processed because they were "received after the statutory notices of deficiency were mailed to each of the petitioners." In the reply, petitioners repeated their assertions that their amended tax returns changed their filing status.

Finally, at the trial session, petitioners conceded that their filing status is "married filing separate" and dropped their joint return contentions. Downing I note 4. At that point, the applicability of Louisiana's usual community property laws became potentially material to the results in the case. See Downing I note 12 for a discussion of the conflict-of-interest problems that arose from the introduction of this issue at such a late date in the proceedings.

instant motion, the parties focus on whether, in light of our findings of fact, the Commissioner's position had a reasonable basis in law.

As a result of the parties' limited arguments, we do not attempt to explore what respondent knew of the facts at any specific date and the consequences of knowing or not knowing any specific fact; we thereby avoid entering what might have turned out to be a Serbonian bog.[7]

In Downing I, we described the parties' dispute as to the requirements of Louisiana law, which both sides contended to be controlling in the instant case, as follows:

> We consider first whether a marriage contract, which was properly filed for registry in the parish in which petitioners were domiciled at the time of this filing, must also be filed for registry in a different parish for the marriage contract to be effective toward third persons as to movables,[13] if petitioners have in the meanwhile become domiciled in that different parish. [Fn. 14 reference omitted.]
>
> [13] Both sides treat the matter before us as being controlled entirely by the rules as to movables; under the circumstances, we limit our determinations to the dispute that the parties present.

We noted in Downing I that both sides agreed that there were no Louisiana court opinions resolving this matter. Both sides directed our attention to a treatise on Louisiana community

---

[7] For a recent review of "Serbonian bog" references in American judicial opinions, see Potter, "Surveying the Serbonian Bog: A Brief History of a Judicial Metaphor", 28 Tul. Mar. L.J. 519 (2004).

property law; that treatise noted the uncertainty as to whether refiling was required under the statute establishing the marital contract filing system.  16 Spaht & Hargrave, Louisiana Civil Law Treatise, Matrimonial Regimes sec. 8.5. (West 2d ed. 1997).

In general, the Commissioner's position is held to be substantially justified when the underlying issue is one of first impression.  TKB Intern., Inc. v. United States, 995 F.2d 1460, 1468 (9th Cir. 1993); Estate of Wall v. Commissioner, 102 T.C. 391, 394 (1994).  This is not a per se rule.  See cases collected in Nalle v. Commissioner, 55 F.3d at 192-193.  However, the instant case is not like any of the situations in the cases collected in Nalle; rather, the instant case falls well into the mainstream of first impression cases.  The controlling statute is not clear on its face, and the treatise that both sides cited describes the statute as "ambiguous" on the issue that both sides regarded as central.  We conclude that a reasonable person could regard the Commissioner's position as a correct interpretation of the Louisiana statute, and so we conclude that the Commissioner's position on this issue was substantially justified.

Sandra contends in her motion papers that

> c).  Even if a second filing had been required, the Respondent still had no reasonable basis in fact or in law to conclude that the "second filing" of the Matrimonial Agreement in Jefferson Parish in 1991 was not effective as to third parties.  Hence, Petitioner's income is still her separate property.

In Downing I we found that the marriage contract had been dealt with in parish records four times, as follows:

(1) On July 14, 1989, petitioners filed the marriage contract "for registry" in the conveyance records of St. Tammany Parish, where petitioners then resided.

(2) On October 8, 1991, Michael, who bought a house in Jefferson Parish 5 days earlier, filed the act of sale for this house in the conveyance records of Jefferson Parish. He attached a copy of the marriage contract to this filed act of sale.

(3) On March 28, 1995, Michael, who bought another house in Jefferson Parish 4 days earlier, filed the act of sale for this house in the conveyance records of Jefferson Parish. He did not attach a copy of the marriage contract to this act of sale, but this act of sale refers to "a marriage contract dated July 12, 1989, and annexed to act recorded as Act No. 91-44488, in the Parish of Jefferson".

(4) On February 2, 2000, the marriage contract was "filed for registry" in the conveyance records of Jefferson Parish.

In their posttrial opening brief, petitioners focused on the effect of the 1989 St. Tammany Parish filing for registry. They then stated as follows:

Nevertheless, and in order to quash any possible lingering doubts, Petitioners have filed separately their marriage contract in the registry of Jefferson Parish. If by some chance the first filing in Jefferson Parish was only good as to the Newman property because it was only attached to the sale of that property and was not separately filed, the second filing (and at least the third such filing overall) of this marriage contract by itself should remove all lingering doubts as to any other immovable (or movable) property located in Jefferson Parish.

In their posttrial answering brief, petitioners took the position that "the filings in Jefferson Parish were only needed to protect

the immovable property of Mr. Downing [i.e., the house Michael bought in 1991 and the house he bought in 1995] that was located in Jefferson Parish."

We believe petitioners got it right in their posttrial answering brief--the 1991 and 1995 filings protected Michael's immovables. However, if respondent's position as to the effect on movables of the 1989 filing was reasonable (and we have concluded that it was), then nothing in the record causes us to conclude that the 1991 filing or 1995 filing--each of which was only an immovables filing--would settle the matter so that respondent's overall position would become unreasonable. The statute in question--La. Civ. Code Ann. art. 2332 (West 1985)-- does not state whether an immovables filing can serve also as a movables filing. The parties have not led us to any caselaw or treatise discussion of the matter. Whatever the answer may turn out to be under Louisiana law, we are satisfied that on this record the Commissioner's position in the litigation as to marriage contract filings was substantially justified.

We hold for respondent on this issue.[8]

---

[8] Under these circumstances, we do not rule on respondent's contention that respondent's position was reasonable in order to avoid a possible "whipsaw". We note that the instant case does not fit into the usual whipsaw setting, in which the Commissioner takes inconsistent positions because the taxpayers involved in the same transaction take inconsistent positions, or the Commissioner reasonably foresees that the taxpayers may take inconsistent positions. See, e.g., Sherbo v. Commissioner, 255 F.3d 650 (8th Cir. 2001), affg. T.C. Memo. 1999-367; Maggie

(continued...)

2.  <u>Litigation Costs--Fraud, Negligence</u>

In order to prevail on the fraud aspect of Sandra's motion, respondent must demonstrate that respondent had a reasonable basis for believing respondent could prove Sandra's fraud by clear and convincing evidence.  See <u>Rutana v. Commissioner</u>, 88 T.C. 1329, 1331, 1337-1338 (1987).

In Downing I, we held that respondent proved by clear and convincing evidence that Michael understated his plumbing business's Schedule C, Profit or Loss From Business, gross receipts by substantial amounts and that these understatements of receipts resulted in understatements of income, which in turn resulted in underpayments of Michael's income tax.  We then held that respondent proved by clear and convincing evidence that some or all of these underpayments were due to Michael's fraud.  Because we held in Downing I, that Sandra did not have a deficiency (for purposes of the instant case, "underpayments" and "deficiency" are equivalent terms; compare sec. 6211(a) with sec. 6664(a)), Sandra could not have any civil fraud penalty liability, and so we did not consider in Downing I whether Sandra had committed civil tax fraud.

---

[8](...continued)
<u>Management Co. v. Commissioner</u>, 108 T.C. 430, 446-448 (1997).  In the instant case, respondent took one position, and (at least by the time of the trial) petitioners united in taking the opposite position.

We have held, supra, that the Commissioner's position as to the marriage contract filings was substantially justified even though we ultimately ruled against respondent in Downing I. If in Downing I we had upheld respondent's position, then presumably Sandra would have had to report on her separate tax return one-half of the omitted income from Michael's plumbing business. The question we face now is whether there was substantial justification for the Commissioner's position that Sandra should be liable for the civil fraud penalty for her failure to report that income on her separate tax return.

In order for Sandra to be liable for civil tax fraud, respondent would have had to show that Sandra intended to evade taxes which Sandra knew or believed she owed. See, e.g., Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Frazier v. Commissioner, 91 T.C. 1, 12 (1988); Danenberg v. Commissioner, 73 T.C. 370, 393-394 (1979). Sandra would not be liable if she merely intended to help Michael evade taxes that Sandra knew or believed Michael owed. In order to show that Sandra knew or believed that she was taxable on the omitted income from Michael's plumbing business, respondent would have to show that Sandra did not believe that the marriage contract and its filing prevented application of Louisiana's usual community property laws.

The very uncertainty as to Louisiana law that leads us to conclude that the Commissioner's position on income-splitting was substantially justified, also leads us to conclude that respondent would have had to present an extraordinarily strong case to persuade us by clear and convincing evidence that Sandra believed her marriage contract filing was ineffective under Louisiana law.  See Danenberg v. Commissioner, supra at 393-394.

We have not found any evidence in the record, nor any evidence that respondent offered or otherwise contended was admissible, that would suggest that it was reasonable for respondent to believe that respondent could prove this essential element of a fraud case against Sandra.  Indeed, respondent's discussion in the memorandum on Sandra's motion for costs deals only with Sandra's involvement in the record-keeping and reporting regarding Michael's business; it does not suggest, even by way of a conclusory comment, that respondent expected to prove by clear and convincing evidence that Sandra knew or believed that Sandra had to report any omitted income from Michael's business.

We conclude that respondent failed to establish that respondent's position as to Sandra's civil fraud penalty was substantially justified.

However, respondent's failure to carry the heavy burden of proof as to the 75-percent civil fraud penalty would have left in

place the notice of deficiency alternative determination of the 20-percent negligence penalty. That is an issue that would be decided by a preponderance of the evidence, and the burden would have been on Sandra to prove that the negligence penalty did not apply.[9] The position of respondent, that Sandra would have been liable for the negligence penalty if respondent had not succeeded in establishing her liability for the civil fraud penalty, was substantially justified.

Accordingly, we hold for Sandra on this issue, but only to the extent that the 75-percent civil fraud penalty would have exceeded the 20-percent negligence penalty.

### 3. Administrative Costs

For purposes of the administrative proceedings in this case, the position of the United States is the position taken by respondent in the notice of deficiency. Sec. 7430(c)(7)(B); Maggie Management Co. v. Commissioner, 108 T.C. at 442.

Neither side has stated that any element of the administrative costs dispute as to substantial justification is different from the elements discussed supra regarding litigation costs. See Maggie Management Co. v. Commissioner, 108 T.C. at 442-443; Swanson v. Commissioner, 106 T.C. at 86-87.

---

[9] As noted supra, sec. 7491 does not affect the instant case. But, even if sec. 7491(c) had applied, the burden of persuasion would have remained on Sandra. Higbee v. Commissioner, 116 T.C. 438, 446-449 (2001).

Accordingly, we reach the same conclusions under this heading as we do under the litigation costs heading.

We hold, for respondent, that respondent has established that the position of the United States in the administrative proceeding, that Sandra was required to apply the usual Louisiana community property laws, was substantially justified.

We hold, for Sandra, that respondent failed to establish that the position of the United States in the administrative proceeding, that Sandra was liable for the fraud penalty, was substantially justified, but only to the extent that the 75-percent civil fraud penalty would have exceeded the 20-percent negligence penalty.

## C.   Protracted Proceedings

Respondent asserts that Sandra "unreasonably protracted" the litigation of this case by filing an unfounded and unnecessary motion.  Section 7430(b)(3) provides that a prevailing party is not entitled to recover costs for periods during which the party has "unreasonably protracted" the administrative or court proceedings.  Sandra contends that she has not unreasonably protracted the proceedings.  Respondent argues that Sandra unreasonably protracted the proceedings and is not entitled to costs for a period of approximately 10 months, beginning with the filing of petitioners' Motion to Reopen the Record or in the Alternative for a New Trial because, respondent asserts, the

motion was made to add evidence to the record which should have been introduced or stipulated at an earlier time.

We granted petitioners' motion to reopen the record but only to the extent of certain concessions made by respondent; we denied that motion in all other respects. The record then was closed, and our opinion in Downing I was later issued.

Respondent states that petitioners had in their possession before the trial all the evidence which they sought to have admitted into the record by their motion, and respondent argues: "They cannot be heard to complain at this late date that they were unfairly disadvantaged by having to check their own records against schedules prepared by respondent." Even so, respondent made numerous concessions on matters raised in petitioners' motion. See Downing I, nn. 24-27.

Some of respondent's concessions reflect errors that had been earlier made by respondent, which respondent both implicitly and expressly acknowledges. Each of the error corrections was in petitioners' favor. The net effects of respondent's concessions were to reduce unreported income for 1994 by almost $500, and for 1995 by more than $8,000. These amounts are not trivial in the context of the instant case.

Petitioners should have noticed and corrected errors in the stipulation document before signing it, and they should have offered all evidence by the end of the trial. However, given the

overall situation, where respondent made errors in drafting the stipulation document and where concessions resulting from petitioner' motion significantly decreased the deficiencies, we are satisfied that any protraction of the proceedings caused by petitioners' motion was not "unreasonable" in the context of the instant case.  Sandra's litigation costs recovery will not be reduced on the basis of unreasonable protraction of the proceeding.

We hold for Sandra on this issue.

D.  Allocation

Sandra's motion claims about $55,000 of combined litigation and administration costs.

Respondent maintains that Sandra should take nothing because she is not the prevailing party.  We hold that Sandra is the prevailing party with respect to the determination of the fraud penalty (to the extent that the fraud penalty exceeds the negligence penalty) against her and she is not otherwise disqualified.  Accordingly, respondent's broad contention falls.

Sandra, on the other hand, contends that she and Michael decided on combined representation to avoid the duplication of expense that separate representation would have entailed.  Accordingly, she contends, every expense is no more than she would have incurred from separate representation and so every expense is part of the costs that should be awarded to her.

Sandra charges that "Respondent continues to commingle the two cases and issues despite this Court's ruling that the Petitioners are separate in property." Firstly, we have concluded (supra Parts B.1, 3) that Sandra was not the prevailing party with respect to the community property issue. Secondly, we shall not ignore the fact that it was petitioners who chose "to commingle the two cases". The costs were incurred by both petitioners and not only Sandra. Accordingly, Sandra's broad contention falls.

We proceed to consider the other contentions that have been raised as to this issue and conclude that, as to some of these contentions, respondent's arrows have hit their targets. Cf. Estate of Fusz v. Commissioner, 46 T.C. 214, 215 (1966).

We agree with respondent's contentions that any award of costs must take account of the facts that the costs were incurred (1) to represent Michael as well as Sandra, and (2) to deal with all the issues in the case, including those where respondent's position was substantially justified. For the most part it is not practical to assign a pigeonhole for every item.

In the notices of deficiency, respondent's determinations of civil fraud penalties against Sandra (to the extent the civil fraud penalties exceeded the negligence penalties) totaled about one-eighth of the aggregate determinations against both Sandra and Michael. Because petitioners had to prepare as though everything that affected either of them also affected the other,

it was reasonable for them to incur costs without incurring additional costs to calculate how much of any item primarily benefited Sandra rather than Michael. Also, everything that affected the amount of the deficiency might have affected the amount of the civil fraud penalty. See sec. 6663(a). Accordingly, we reject respondent's contention that we should reject petitioners' costs that "pertain to the bank deposits method". Accordingly, we conclude that one-eighth of the administrative costs and the litigation costs (except as to litigation costs incurred in connection with the instant motion for costs) is properly allowable to Sandra in connection with the fraud issue.

Respondent contends that none of the costs incurred before April 3, 1998, are awardable, relying on the last sentence of section 7430(c)(2). See supra note 4. Sandra does not appear to dispute respondent's factual predicates or statutory interpretation. Accordingly, none of the costs incurred before April 3, 1998, are to be taken into account in determining the total to which the one-eighth allocation is to be applied.

Respondent also contends that Sandra is not entitled to litigation costs in connection with petitioners' motion to restrain assessment and collection. It appears that, in violation of section 6213(a), respondent assessed the determined deficiencies and penalties after petitioners filed their

petition. Petitioners' counsel persuaded respondent to abate the assessments. After all the illegal assessments had been abated, petitioners filed a motion under Rule 55 to restrain assessment and collection. The origin and purpose of Rule 55 is described in the Court's explanatory Note. 93 T.C. 821, 876-877. Petitioners' counsel's actions leading to the abatements are in furtherance of the instant litigation; the costs thereof are proper litigation costs. However, the Rule 55 motion, which was filed after all the moved-for abatements had already been accomplished, was moot at its inception. The costs of the Rule 55 motion shall be borne by petitioners and are not proper litigation costs for our purposes.

We disagree with respondent's contention that Sandra unreasonably protracted the proceedings. Supra, Part C. The costs incurred in connection with the actions respondent identifies in this contention are includable in the base for the one-eighth allocation.

The costs that have been incurred, and those that will be incurred, in connection with the computations under Rule 155 (except those that relate to the award under section 7430) are allocable entirely to Michael and so are not includable in the base for the one-eighth allocation.

Sandra is the prevailing party but only with respect to the excess of the civil fraud penalties over the negligence

penalties, and not with respect to the deficiencies.  The excess of the civil fraud penalties over the negligence penalties is about one-third of the total of the civil fraud penalties and the deficiencies determined against Sandra.  We conclude that one-third of the costs incurred in connection with the instant motion is properly allowable to Sandra in connection with the penalties issue.

The parties are to calculate the amounts so awardable in connection with the computations under Rule 155.  They are cautioned to avoid "penny-wise and pound-foolish" disputes on this matter.  See, e.g., Dang v. Commissioner, 259 F.3d 204, 206 (4th Cir. 2001), affg. an unreported order and decision of this Court entered July 21, 2000; Goettee v. Commissioner, T.C. Memo. 2003-43 (issue II, B. 1, relating to a dispute, in an interest abatement case, as to whether $2.44 had been paid on May 19, 1985, or May 19, 1986).

E.  Qualified Offer

Sandra contends that, because she submitted a qualified offer within the meaning of section 7430(g) and the judgment as to her was less than the amount of the offer, she is the prevailing party under section 7430(c)(4)(E).  See supra note 4. Respondent contends that "Petitioner's letter * * * was not a qualified offer, because it was not designated at the time it was made as a qualified offer for purposes of section 7430(g)."

Sandra responds that "Petitioners did not label their settlement offer as a qualified offer, but an offer to settle the case is an offer to settle the case."

We agree with respondent.

The settlement offer on which Sandra relies, sent by petitioners' counsel to respondent's counsel, states as follows:

> RE:  Michael Downing and Sandra Downing
>      Tax Years 1994 and 1995
>
> Dear Mrs. Canavello:
>
>      In view of the upcoming trial date and the forthcoming expenses associated with the final preparations for trial, I have been authorized to make you a settlement offer.  This settlement offer is intended to cover both years (1994 and 1995) and all of their liability including tax, interest, and penalties for those years.  This amount is $5,750.00.  If you decide to reject this offer, please do so in writing so that I may forward such letter to my clients.  If you accept this offer, please call me.
>
>      Thank you for your cooperation and assistance in this matter.

Section 7430(g)(1) defines "qualified offer".  Subparagraph (C) specifically requires a qualified offer to be "designated at the time it is made as a qualified offer for purposes of this section".  Nothing in petitioners' settlement offer even remotely satisfies the subparagraph (C) requirement.[10]  The requirements

---

[10] Compare petitioners' settlement offer with the qualified offer set forth in Johnston v. Commissioner, 122 T.C. 124, 126 (2004).  We do not mean to suggest that the Johnston offer is the only way to comply with the requirement of sec. 7430(g)(1)(C), but there must be something in a putative qualified offer that

(continued...)

of the "qualified offer" definition are conjunctive.
Petitioners' settlement offer fails to meet the subparagraph (C)
requirement, and so it is not a qualified offer.

We hold for respondent on this issue.[11]

To reflect the foregoing,

An appropriate order will be
issued granting petitioner's motion
to the extent indicated herein and
denying petitioner's motion in all
other respects.

---

[10](...continued)
might fairly qualify as a designation required by the statute.
As the Court of Appeals for the Third Circuit stated in another
Internal Revenue Code setting, "Congress has drafted the statute,
and we are not free to rewrite it." Hildebrand v. Commissioner,
683 F.2d 57, 59 (3d Cir. 1982), affg. T.C. Memo. 1980-532.

[11] Under these circumstances, we do not consider
respondent's additional contention that the settlement offer does
not qualify under sec. 7430(g)(1)(B) because it "does not specify
what portion of the offered amount, if any, pertains to
[Sandra's] liability as distinguished from that of" Michael.
Respondent has not contended, and so we do not consider, whether
sec. 7430(c)(4)(E)(i) (supra note 4 relating to requirement that
liability determined pursuant to the judgment be equal to or less
than liability under the offer) precludes Sandra from "qualified
offer" relief because the $5,750 offered amount is less than the
finally redetermined liabilities of Sandra and Michael combined.
Also, we do not consider whether sec. 7430(c)(4)(E)(iv) (supra
note 4 relating to coordination) precludes Sandra from "qualified
offer" relief because of the limited relief we have granted to
Sandra with regard to part of the civil fraud penalties.
Finally, it is not necessary to determine how much of the claimed
costs were incurred after Jan. 18, 1999. See supra note 4 last
paragraph.