PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HIEP H. DANG; PHUONG MY T.
CHAU,

Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

No. 00-2346

Appeal from the United States Tax Court.
(Tax Ct. No. 99-16147)

Argued: May 10, 2001

Decided: July 26, 2001

Before WILLIAMS and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Williams and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Bruce Elwyn Gardner, THE GARDNER LAW FIRM,
P.C., Washington, D.C., for Appellants. Gilbert Steven Rothenberg,
Tax Division, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Claire Fallon, Acting
Assistant Attorney General, Sara Ann Ketchum, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

**OPINION**

KING, Circuit Judge:

Hiep H. Dang and Phuong My T. Chau ("taxpayers") appeal the Tax Court's denial of their motion for an award of the administrative and litigation costs arising from their now-settled petition in the Tax Court. For the reasons set forth below, we affirm.

I.

This curious tale began when the taxpayers, in March of 1999, filed their 1998 federal income tax return. The taxpayers, who are Vietnamese, neither speak nor understand English well. They claimed a tax refund for 1998 of $2,230. The Internal Revenue Service ("IRS") mailed the taxpayers a refund check in that amount on April 2, 1999, and then, two weeks later, informed them that their 1998 return was being audited. The taxpayers did not cash their refund check, although they could have negotiated it immediately upon receipt.

On June 8, 1999, the IRS mailed the taxpayers a "30-day letter" asserting a proposed tax deficiency of $2,268, comprising the $2,230 they had claimed for a refund, plus $38 in interest as of July 3, 1999.[1] The letter directed the taxpayers to either: (1) sign and return the consent form, paying the amount due; or (2) if they disagreed with the adjustments, submit additional documentation within thirty days. The taxpayers did not submit any additional documentation or return the consent form, but, on June 18, 1999, they mailed to the IRS the still unnegotiated $2,230 refund check.

The IRS received the uncashed refund check from the taxpayers on June 23, 1999, and — almost six weeks later — on August 2, 1999, credited the taxpayers' account in the sum of $2,230. It did not, however, treat the returned check as payment in full of the proposed deficiency; instead, it recorded the returned refund check as a "frozen

---

[1]The 30-day letter stated that "[t]he amount you now owe is $2,268.00." However, an enclosure to the letter indicated that $37 interest would be due on June 30, 1999, and an additional $1 would accrue as of July 3, 1999.

refund," tantamount to a claimed refund that is held by the IRS pending investigation of a tax return. Four days later, on August 6, 1999, and in apparent disregard of the returned check, the IRS mailed the taxpayers a "notice of deficiency" in the sum of $2,230. The notice explained that the taxpayers were not entitled to the $2,230 refund, stating further that $38 in interest had accrued on their account.

After receiving the notice of deficiency, the taxpayers retained counsel, who filed a petition with the Tax Court on October 14, 1999, asserting that there was "no tax deficiency . . . for the 1998 tax year" owed by taxpayers on August 6, 1999, because interest could not accrue on a returned, unnegotiated refund check. On November 18, 1999, counsel for the Commissioner mailed the taxpayers a proposed decision and stipulation, which offered the taxpayers credit for the returned check; however, it also stated that "there is still a deficiency in tax, *which will be assessed once we close this case.*" (emphasis added). The remaining deficiency, if any, would have amounted to no more than the $38 in interest the IRS asserted was owed. The taxpayers declined to agree to the proposed settlement, and they instead announced their intention to pursue the dispute in Tax Court.

The taxpayers subsequently filed a motion in the Tax Court to dismiss or, in the alternative, for summary judgment. The Commissioner contended, in opposition, that a deficiency still existed on August 6, 1999 (when the notice of deficiency was mailed). The Commissioner noted that because the taxpayers had not signed and returned the consent form included with the 30-day letter of June 8, 1999, the IRS was entitled to treat the return of the refund check as a "deposit" and not as a "payment."[2]

---

[2]A taxpayer who is alleged to have a tax deficiency can either make a "payment" or "deposit." A deposit can be for any amount up to and including the proposed liability. The effect of a deposit is that it stops interest from accruing, may be withdrawn at any time, and preserves a taxpayer's right to petition the Tax Court. A payment, on the other hand, evinces agreement with the IRS's proposed deficiency and indicates the taxpayer's consent to pay the proposed amount. Generally, the taxpayer identifies the character of the remittance (payment or deposit). If the character of the remittance is not designated, IRS procedures provide that the remittance "will be treated as a payment of tax if it is made in

At its April 11, 2000 hearing on the taxpayers' motion to dismiss, the Tax Court was understandably confused and skeptical about the substance of the controversy between the parties. It asked, "What is the practical ramification of ruling one way or the other? Is it simply the amount of interest that's potentially due[?]" J.A. 12d. Taxpayers' counsel responded that he intended to make a claim for litigation costs. The Tax Court then observed that counsel should "think once or twice about whether you really want to file a motion for litigation costs in this case given the circumstances . . . you're expending . . . a couple of thousand dollars on $38 worth of interest." J.A. 24. At the urging of the Tax Court, the parties then filed, on April 18, 2000, a Stipulation of Settled Issues. By the Stipulation, the IRS agreed that the taxpayers had a credit to their account — prior to the August 6, 2000 mailing of the notice of deficiency — in the sum of $2,230, the amount of the returned refund check. J.A. 29-30. The taxpayers, on the other hand, stipulated and agreed that they were not entitled to the refund. *Id.* The Stipulation makes no mention of and does not resolve whether any interest was due, or whether the IRS would bear the taxpayers' litigation costs.

Undeterred by the Tax Court's earlier admonitions, the taxpayers, on May 22, 2000, filed a motion for administrative and litigation costs under I.R.C. § 7430.[3] This motion asserted, inter alia, that the Tax Court lacked subject matter jurisdiction over the original controversy because no deficiency was ever due for the 1998 tax year. Presumably

response to a proposed liability . . . and remittance in full of the proposed liability is made." Rev. Proc. 84-58 at § 4.03.1, 1984-2 C.B. at 502-03.

When the IRS received the unnegotiated refund check on June 23, 1999, the proposed liability of the taxpayers was $2,268 (a calculation that included interest). On August 2, 1999, for reasons unexplained, the IRS finally credited the taxpayers account for a deposit in the sum of the returned check, issuing a "frozen" credit of $2,230. Whether the IRS should have used some measure of common sense and treated return of the unnegotiated refund check as "remittance in full" regardless of the failure of the taxpayers to so indicate is not a question we need answer today. *See infra* Part II.B.

[3]The taxpayers asserted costs of $6,638 as of the filing of their May 22, 2000 motion.

the taxpayers believed that such a position, if accepted by the Tax Court, would mean that they were "prevailing parties," and thus entitled to costs under § 7430. The Commissioner responded that, for several reasons, the taxpayers were not entitled to costs, including: (1) they were not prevailing parties, and (2) they had unreasonably protracted the litigation. Either of these defenses, if accepted, would be sufficient to defeat a claim for costs. *See* § 7430(a), (b). The Commissioner also insisted that its position in the case was substantially justified, which, if true, would, pursuant to I.R.C. § 7430(c)(4)(B), also defeat any claim for costs.

The Tax Court, by its July 21, 2000 Order and Decision, from which this appeal is taken, agreed with the Commissioner in all respects. The court held that the taxpayers were not prevailing parties since they "agreed to the deficiency in full." J.A. 34.

The taxpayers then, on August 21, 2000, filed a motion to vacate the July 21, 2000 Order and Decision, maintaining once more that the Tax Court lacked subject matter jurisdiction. The Tax Court, in its September 13, 2000 Order denying the motion to vacate, responded:

> Even if we were to grant [the taxpayer's] motion . . . it would not change our view as to the outcome of the claim for administrative and litigation costs. We can consider whether [the taxpayers] would be entitled to administrative and litigation costs and fees under section 7430 even when there are jurisdictional defects in a case. [Citing cases] . . . . We denied [the taxpayer's] motion for an award of reasonable administrative and litigation costs [because] we concluded that [the taxpayers] were not the prevailing party. Thus, given this record, we would not under any circumstances find for [the taxpayers] on the administrative and litigation costs issue.

J.A. 37. On October 3, 2000, the taxpayers filed their Notice of Appeal to this Court. The Notice of Appeal provides:

> Notice is hereby given that Hiep H. Dang & Phuong My T. Chau, hereby appeal to the United States Court of Appeals for the Fourth Circuit *from that part of the decision of this*

*Court stating it has subject matter jurisdiction over this case.* Said decision was entered . . . on the 21st day of July, 2000.

Petitioners filed a motion for reconsideration dated August 21, 2000 and said motion was denied on September 13, 2000.

J.A. 38 (emphasis added).

## II.

### A.

At the threshold, we must decide whether jurisdiction lies in this Court over the issues the taxpayers seek to raise on appeal. This question presents itself because of the restrictive language found in the Notice of Appeal. Pursuant to Fed. R. App. P. 3(c)(1)(B), a notice of appeal must "designate the judgment, order, or part thereof being appealed[.]" And the Supreme Court has construed Rule 3(c) as mandatory and jurisdictional. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315-16 (1988).

The taxpayers, in seeking appellate review of the denial of their claim for costs, designate for appeal solely the issue of the Tax Court's subject matter jurisdiction. However, denial of the taxpayers' pre-Stipulation motion to dismiss for lack of subject matter jurisdiction was never revisited in the Tax Court, and it has not been briefed or argued before us. Through their briefing and argument, the taxpayers seek appellate relief only with respect to the Tax Court's denial of the motion for costs, via its July 21, 2000 Order and Decision, and the denial of their motion to vacate the July 21, 2000 Order and Decision, embodied in the Tax Court's Order of September 13, 2000.

We have consistently held that "an error in designating the issue appealed will not result in a loss of appeal as long as 'the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake.'" *Canaday v. Crestar Mortgage Corp.*, 109 F.3d 969, 974 (4th Cir. 1997) (citing cases). We have no basis

to except this case from this general rule, even if the apparent defect was the result of misguided intentions as opposed to mistake. The taxpayers' intent to appeal the costs issue is manifest and it is "fairly inferred" (it is the only issue remaining in the case). And the Commissioner has not in any way been prejudiced by any "mistake" on the part of the taxpayers. The parties have fully briefed and argued the merits of the § 7430 issue, and the Commissioner has not raised any objection concerning the sufficiency of the Notice of Appeal. Thus, we should and will consider each of the taxpayers' assertions on appeal that, if accepted, would require us to reverse the Tax Court's July 21, 2000 Order and Decision, or its Order of September 13, 2000. *See, e.g.*, *United States v. Garcia*, 65 F.3d 17, 18 (4th Cir. 1995) ("pleadings under Rule 3 are liberally construed").

B.

In Tax Court litigation, under the provisions of I.R.C. § 7430(a), an award of administrative and litigation costs may be made to "prevailing parties" in appropriate circumstances. In this instance, however, the Tax Court held that the taxpayers did not "prevail" because they "conceded all of the adjustments determined in the notice of deficiency . . . [and] they agreed to the deficiency in full." Our review in this regard accords substantial deference to the reasoning of the Tax Court. We examine its decision for an abuse of discretion. *See Bowles v. United States*, 947 F.2d 91, 94 (4th Cir. 1991).

Having considered its Order and Decision of July 21, 2000, in this context, we see no reason to disrupt the Tax Court's conclusion. The issue initially before the Tax Court, i.e., the merits of the taxpayers' petition, was the asserted tax deficiency of $2,230. The Tax Court found that the taxpayers, by agreeing to the Stipulation of Settled Issues, conceded their liability on the tax deficiency issue in full. The only other point of contention between the parties would have related to interest, and any litigation against the IRS over assessed interest must be pursued in district court, via a tax refund suit. The district courts of the United States have exclusive jurisdiction over refund suits. *See Commissioner v. McCoy*, 484 U.S. 3, 6-7 (1987)

("[Q]uestions relating to interest . . . [are] separate and outside the scope of the petition to the Tax Court[.]").[4]

Moreover, the taxpayers' assertion that the Tax Court lacked subject matter jurisdiction, even if meritorious, would not have changed the disposition of their motion for costs. Indeed, the Tax Court's denial of the motion for costs was not dependent on its belief that it possessed subject matter jurisdiction over the underlying petition. The court's September 13, 2000 Order makes clear that "[e]ven if we were to [agree that we did not possess jurisdiction], it would not change our view as to the claim for administrative and litigation costs." J.A. 37. In this connection, the Tax Court correctly held that the provisions of § 7430 apply "even where there are jurisdictional defects in a case." J.A. 37 (citing *Hubbard v. Commissioner*, 89 T.C. 792, 798 (1987); *Weiss v. Commissioner*, 88 T.C. 1036 (1987)).[5]

Thus, in order to secure an award of costs, the taxpayers were required to satisfy the requirements of § 7430, which include being determined "prevailing parties" in their Tax Court litigation. The ruling to the contrary by the Tax Court was well within its discretion, and we must therefore affirm its July 21, 2000 Decision and Order denying the taxpayers' motion for costs.[6]

---

[4]We disagree with the IRS's implication that interest would be owed by the taxpayers. Since the refund was never actually received, inasmuch as the taxpayers never negotiated the refund check, the money represented by the check was in the IRS's account at all times. *See, e.g.*, *United States v. Baumann*, No. 86 C 4201, 1987 WL 6851, *1 (N.D. Ill. 1987) ("[I]nterest should accrue [from] . . . the date on which the refund check was cashed."); *United States v. Lasbury*, 53 A.F.T.R.2d 84-344, 1983 WL 1682, *3 (D. Ariz. November 22, 1983) ("Payment does not occur until the check has been cashed. If the taxpayer cashes the check . . . he should pay the interest on it."). It was not until oral argument, however, in response to questions from this Court, that counsel for the Commissioner advised the taxpayers that it would forgo any claim for interest.

[5]If § 7430 did not apply when the Tax Court lacks jurisdiction, there would be no statutory basis for an award of costs.

[6]Based on our determination that the Tax Court did not abuse its discretion in its July 21, 2000 Decision and Order, it follows that its September 13, 2000 Order (refusing to vacate the July 21, 2000 Decision and Order) was likewise not an abuse of discretion.

### III.

Pursuant to the foregoing, we affirm the Tax Court's denial of administrative and litigation costs to the taxpayers.

*AFFIRMED*