T.C. Memo. 2004-9

UNITED STATES TAX COURT

JOHN G. GOETTEE, JR. AND MARIAN GOETTEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 26591-96.                    Filed January 6, 2004.

    Ps filed a motion for reconsideration, and an amended
motion for reconsideration, of our opinion in <u>Goettee v.
Commissioner</u>, T.C. Memo. 2003-43.

    <u>Held</u>:  Ps' amended motion for reconsideration is
denied.

<u>Matthew J. McCann</u>, for petitioners.

<u>William J. Gregg</u>, for respondent.

---

    [*]  This opinion supplements our previously filed opinion in
<u>Goettee v. Commissioner</u>, T.C. Memo. 2003-43.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

CHABOT, Judge:  This matter is before us on petitioners'
amended motion under Rule 161[1] for reconsideration of our opinion
reported as Goettee v. Commissioner, T.C. Memo. 2003-43,
hereinafter sometimes referred to as Goettee I.  In Goettee I, we
made findings of fact, which we adopt for purposes of this
supplemental opinion.  For clarity, however, we begin with a
brief recital of the facts pertinent to this supplemental
opinion.

### FINDINGS OF FACT

During September 1981, petitioners acquired a limited
partnership interest in The Thompson Equipment Associates
partnership, hereinafter sometimes referred to as TEA.
Petitioners claimed flowthrough losses from TEA on their tax
returns for 1981, 1982, and 1983.  Petitioners carried back
"credits/losses" from 1981 to 1978 and 1979.

On October 15, 1986, respondent sent to petitioners a notice
of deficiency, in which respondent made adjustments on account of

---

[1]  Unless indicated otherwise, all Rule references are to
the Tax Court Rules of Practice and Procedure.

Petitioners filed a motion for reconsideration on March 27,
2003.  On May 27, 2003, pursuant to the Court's order, they filed
their amended motion for reconsideration.

TEA items and determined deficiencies and additions to tax for 1978, 1979, 1981, and 1982.

On November 3, 1986, petitioners filed a petition with this Court seeking a redetermination of their tax liabilities for 1978, 1979, 1981, and 1982. Petitioners' case was assigned to a group of cases collectively referred to as the Barrister Books project, hereinafter sometimes referred to as Barrister. Andrew M. Winkler (hereinafter sometimes referred to as Winkler) served as lead counsel for the Commissioner in the Barrister cases.

Sometime around 1986, the Commissioner extended a uniform settlement offer to any Barrister investor. The Commissioner withdrew the offer on or about May 16, 1989. In the spring of 1993, the Commissioner renewed the earlier settlement offer.

The task of processing the settlement of the Barrister cases fell to Winkler and Elmer Craig (hereinafter sometimes referred to as Craig), an Appeals officer in respondent's Louisville, Kentucky, office, hereinafter sometimes referred to as the Louisville office. Winkler and Craig generally processed the Barrister cases--including petitioners' case--in taxpayer alphabetical order.

In the spring of 1993, the Commissioner's Appeals Office in Cincinnati, Ohio (hereinafter sometimes referred to as the Cincinnati office), learned of the Barrister case settlements that Winkler and Craig were processing. At that time, the

Cincinnati office Appeals officers' caseloads were about half of their normal caseloads. The chief of the Cincinnati office, the associate chief (Paul R. Becker, hereinafter sometimes referred to as Becker), and Appeals Officer Fran Rowland (hereinafter sometimes referred to as Rowland) went to the Louisville office to discuss with Winkler and Craig the possibility of the Cincinnati office's processing some of the Barrister case settlements. By the end of the meeting, it was decided that the Cincinnati office would take some 200 of the Barrister cases. Winkler remained responsible for executing Tax Court decision documents on behalf of the Commissioner in Barrister cases. The Cincinnati office picked up the cases from the Louisville office in June of 1993.

The number of cases transferred to the Cincinnati office, coupled with their complexity, created the need for Craig to conduct an all-day training session about how to process the settlement of the cases. The need for a training session to become able to settle a case was not typical.

About July of 1993, about 75 cases, including petitioners' case, were assigned to Rowland.

Appeals officers in the Cincinnati office managed multiple priorities while they processed the settlement of the Barrister cases. Cases nearing the end of the limitations period, and Tax Court cases calendared for trial in Cincinnati and Columbus,

Ohio, were given a higher priority than the Barrister cases. Rowland typically did all of the service center claim cases-- these, too, were given a higher priority than the Barrister cases.

Although Rowland's caseload was about half her normal caseload in the spring of 1993, her caseload returned to normal about the same time the Barrister cases were assigned to her. Because of the increase in her workload, Rowland did not send any settlement letters to any Barrister taxpayers until about September of 1993.

The settlement letters (1) stated the terms of the settlement offer, (2) asked the recipients to submit to Rowland copies of their canceled checks within 10 days so that she could verify the recipients' actual cash investment in the partnership, and (3) stated that upon receipt of the verification information, Rowland would send to the Barrister taxpayer computations which showed the tax effects of the settlement offer to that taxpayer.

If a taxpayer accepted the settlement offer and returned the signed decision document, then Rowland prepared and submitted to Becker an appeals transmittal and case memorandum for his approval. If Becker approved, then he signed the appeals transmittal and case memorandum and transmitted the settlement documents to Winkler. Winkler then reviewed the format and contents of the decision documents, signed them, and forwarded

them to the Court for entry of decision.  It ordinarily took Winkler less than 1 hour to review and sign an average decision document that did not have any problems.  However, Winkler gave priority to working on cases calendared for trial by the Court.

On November 24, 1993, Rowland sent to petitioners a settlement letter.  On December 2, 1993, petitioners' verification information was sent to Rowland.

On October 26, 1994, Rowland mailed the settlement documents to petitioners.  Petitioners signed the decision document on November 25, 1994, and mailed it to Rowland on December 14, 1994. The decision document stated, in pertinent part:

> It is further stipulated that, effective upon entry of this decision by the Court, the petitioners waive the restriction contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiencies in income tax and additions to tax (plus statutory interest) until the decision of the Tax Court has become final.

On December 23, 1994, Rowland prepared, signed, and sent to Becker an appeals transmittal and case memorandum which outlined the terms of the settlement of petitioners' case.

On January 13, 1995, Becker signed and approved the appeals transmittal and case memorandum.  Becker then delivered petitioners' proposed decision document to the records office of the Cincinnati office, which had 5 days to send the proposed decision document to Winkler.

Winkler signed petitioners' decision document on April 25, 1995, and then forwarded it to the Court for entry of decision. On May 2, 1995, the Court entered decision in petitioners' case.

OPINION

Petitioners urge us to grant their amended motion for reconsideration of our opinion in Goettee I in order to correct what they contend are the following errors:  (1) Goettee I failed to address respondent's error in computing the amount of interest due from petitioners; (2) the Commissioner's Appeals Office ignored or confused specific time periods (September 9 through October 3, 1995, and September 21 through November 13, 1996) for which interest should have been abated; (3) respondent abused respondent's discretion by failing to abate interest that accrued from December 2, 1993, through October 26, 1994; (4) respondent's delay in assessing the liabilities warrants additional abatement periods; and (5) the Court should give full effect to respondent's concession that interest should be abated for April 25, 1995.

Respondent contends that petitioners have not presented evidence of unusual circumstances or substantial error that would warrant the granting of a motion for reconsideration.  Respondent argues that (1) respondent did not err in computing the amount of interest due, but rather, underabated interest for the conceded abatement periods; (2) petitioners' request for additional time

periods is a departure from petitioners' briefs; (3) the record supports respondent's prioritization decisions; (4) the alleged delay in assessing the liabilities does not warrant additional periods of abatement; and (5) the Court's conclusion that interest should not be abated for April 25, 1995, is correct. Respondent concludes that petitioners' amended motion for reconsideration should be denied.

We agree with respondent's conclusion.

Reconsideration under Rule 161 permits the Court to correct manifest errors of fact or law and allows a party to introduce newly discovered evidence that could not have been introduced in a prior proceeding even if the moving party had exercised due diligence.  See Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998); see also Traum v. Commissioner, 237 F.2d 277, 281 (7th Cir. 1956), affg. T.C. Memo. 1955-127.  The granting of a motion for reconsideration rests within the discretion of the Court, and we generally deny such a motion unless unusual circumstances or substantial error is shown.  See Alexander v. Commissioner, 95 T.C. 467, 469 (1990), affd. without published opinion sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993); Estate of Halas v. Commissioner, 94 T.C. 570, 574 (1990); Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). Reconsideration is not the appropriate forum for rehashing previously rejected arguments or offering new legal theories to

reach the result desired by the moving party.  See Estate of Quick v. Commissioner, 110 T.C. at 441-442; Stoody v. Commissioner, 67 T.C. 643, 644 (1977).  In the instant case, petitioners have not presented such newly discovered evidence and have not shown such unusual circumstances or substantial error.

We discuss seriatim petitioners' requests.

1.  Erroneous calculations.

Respondent acknowledged, and we found, that respondent overassessed interest in at least the amounts of $108.33 for 1981 and $298.47 for 1982.  We directed the parties in note 26 of the Opinion, pursuant to the parties' stipulation, to correct these errors and any other calculation errors by recalculating the amounts of interest for each year in issue.  Accordingly, this issue is already dealt with, and properly dealt with, in Goettee I and will not be reconsidered.

2.  Sept. 9 through Oct. 3, 1995; Sept. 21 through Nov. 13, 1996.

Petitioners did not ask us to consider at trial or on brief the specific time periods set forth in their motion that were allegedly confused or ignored by the Commissioner's Appeals Office during which errors or delays occurred that warrant abatement of interest.  Instead, petitioners asked the Court, on answering brief, to order an abatement for additional unspecified time periods.  In Goettee I we declined to do so.  We do not now

entertain petitioners' more detailed request.  As we stated, supra, reconsideration is not the appropriate forum for offering new legal theories or rehashing previously rejected arguments to reach the desired result.

    3.  Dec. 2, 1993, through Oct. 26, 1994.

We specifically dealt with this time period in Goettee I and concluded that respondent's prioritizations in the settings in which they occurred did not constitute ministerial acts and so petitioners were not entitled to any relief.  Petitioners direct our attention to Jacobs v. Commissioner, T.C. Memo. 2000-123.  In contrast to Jacobs, the record in the instant case includes substantial evidence as to what happened, when, and why, as to this time period.  Petitioners have not presented anything (evidence, caselaw, or other) warranting reconsideration of our Goettee I rejection of this contentions.

    4.  Section 6601(c).[2]

Petitioners raise on this motion, for the first time, section 6601(c) as a basis for arguing that additional time periods should be abated because of respondent's delay in assessing the liabilities.

---

    [2]  Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced at the time the petition in the instant case was filed.

Petitioners contend that, under section 6601(c), interest should have stopped accruing on January 13, 1995, 30 days after they transmitted to Rowland the executed decision document, which included a waiver of restrictions on assessment pursuant to section 6213(d).  They argue that "any suggestion that Respondent has the right to decide when to file stipulated decision documents" is a "tortured interpretation" of section 6601(c).

Respondent maintains that all of respondent's interest computations comport with section 6601(c), and that interest properly stopped accruing on June 1, 1995, 30 days after the decision document was entered by the Court.

The language of the parties' agreed-upon waiver itself resolves this issue.  See also, e.g., Pallottini v. Commissioner, 90 T.C. 498, 502-503 (1988), where we focused on the text of the document (in that case, a statute) itself, rather than general rules, in order to determine the document's effect.

The parties stipulated as follows:

> effective upon entry of this decision by the Court, the petitioners waive the restriction contained in I.R.C. 6213(a) prohibiting assessment and collection of the deficiencies in income tax and additions to tax (plus statutory interest) until the decision of the Tax Court has become final.

Thus, the parties' waiver directed that it was to become effective on the entry of decision, which was May 2, 1995. The 30-day period began on that date.[3]

5. <u>Apr. 25, 1995</u>.

Petitioners ask us to give full effect to respondent's concession that interest should be abated for April 25, 1995. We explained in Goettee I (at note 15) that we do not "give effect to that 1 day because the record clearly and indisputably shows that on that day Winkler moved the process along. Indeed, the parties have so stipulated." We shall not now revisit this issue.

Accordingly, petitioners' amended motion for reconsideration will be denied.

To take account of the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.

---

[3] We agree with petitioners that respondent cannot simply place decision documents to the side and file them with the Court when respondent sees fit. In Goettee I, respondent conceded that "an abatement of interest, for the period from February 25, 1995 through April 25, 1995, should be allowed to petitioners in the unusual circumstances of this case." Moreover, we concluded that interest should be abated for the period from Jan. 25 through Feb. 24, 1995 (i.e., up until the period of respondent's concession). Accordingly, any injustice that might have resulted from the stipulation was ameliorated by respondent's concession and our conclusion. We explained in Goettee I our reasons for not ordering abatement for the remaining days during this period (Jan. 13 through May 31, 1995).