UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1975

JOHN G. GOETTEE, JR.; MARIAN GOETTEE,

                              Petitioners - Appellants,

        versus

COMMISSIONER OF INTERNAL REVENUE,

                              Respondent - Appellee.

Appeal from the United States Tax Court.   (Tax Ct. No. 96-26591)

Argued:  May 26, 2006              Decided:  July 28, 2006

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Matthew Joseph McCann, Bethesda, Maryland, for Appellants. Randolph L. Hutter, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.  **ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Petitioners-Appellants, John and Marian Goettee, appeal the Order and Decision of the Tax Court denying them abatement of interest that had accrued on past-due taxes. The Goettees claim that the delay in payment was due in large part to the IRS and that they therefore should not be liable for interest accrual resulting from that delay. They also contend that the Tax Court abused its discretion in refusing to award them reasonable litigation costs in the action as a prevailing party.

Because the IRS is not compelled to abate interest for the periods in question under the applicable statutes and regulations, and because the Tax Court reasonably acted within its discretion in refusing to award litigation costs to the Goettees, we Affirm the Order and Decision of the Tax Court.

I.

During September 1981, the Goettees acquired a limited partnership interest in The Thompson Equipment Associates partnership ("TEA"), a type of shelter that came to be known as a "Barrister Books" shelter. The IRS subsequently found this type of shelter to be improper.

On October 15, 1986, the IRS sent the Goettees a notice of deficiency. In it, the IRS made adjustments on account of TEA items and determined deficiencies and additions to the Goettee's

2

tax liability for 1978, 1979, 1981, and 1982. On November 3, 1986, the Goettees challenged this determination in Tax Court and sought a redetermination of their tax liabilities for all four years. The Tax Court assigned the Goettees' case to a group of cases collectively referred to as the Barrister Books project. Andrew M. Winkler served as lead counsel for the IRS in the Barrister Books cases. Sometime around 1986, Winkler began extending a uniform settlement offer to Barrister Books investors by settlement letters one batch at a time. Winkler decided not to send a letter to all Barrister Books investors simultaneously because he felt that it would be impossible for the IRS to process all of the settlements at once. Winkler stopped extending the offer on or about May 16, 1989 because he was waiting for the resolution of Series 115, the lead case in the Barrister Books litigation project. In the spring of 1993, after the Series 115 case concluded, Winkler again began extending settlement offers. He sent the letters out roughly in alphabetical order, subject to some exceptions. For example, if several investors were represented by a single representative, Winkler extended the offer to those individual investors at the same time.

Although the Barrister Books settlements were complex, the IRS staffed the matter leanly. The agency assigned the work to officers to handle in addition to their normal case load. Around July 1993, the Goettees' case was assigned, along with about

seventy-five other Barrister Books cases, to appeals officer Fran Rowland in the IRS's Cincinnati office. Like other appeals officers, Rowland managed multiple priorities while she processed the settlement of the Barrister Books cases. Cases nearing the end of the limitations period and those calendared for trial in Cincinnati and Columbus, Ohio were given a higher priority than the Barrister Books cases. Although Rowland's caseload was down by about half in the spring of 1993, it returned to normal about the same time that the Barrister Books cases were assigned to her. Because of the increase in her workload, Rowland did not send settlement letters to any Barrister Books taxpayers until about September of 1993.

The settlement letters (1) stated the terms of the settlement offer, (2) asked the recipients to submit to Rowland copies of their canceled checks within 10 days so that she could verify the recipients' actual cash investment in the partnership, and (3) stated that upon receipt of the verification information, Rowland would send to the taxpayer computations which showed the tax effects of the settlement offer to that taxpayer.

Once a taxpayer accepted the settlement offer and returned the signed decision document, Rowland prepared and submitted to her boss, Paul Becker, an appeals transmittal and case memorandum for his approval. If Becker approved, he signed the appeals transmittal and case memorandum and transmitted the settlement documents to

4

Winkler. Winkler then reviewed the format and contents of the decision documents, signed them, and forwarded them to the Tax Court for entry of decision.

On November 24, 1993, Rowland sent the Goettees a settlement letter. On December 2, 1993, the Goettees returned the verification information to Rowland.  On October 26, 1994, Rowland mailed the settlement documents to the Goettees.  They signed the decision document on November 25, 1994, and mailed it to Rowland on December 14, 1994.  The IRS eventually accepted the settlement and billed the Goettees for their tax deficiencies.

The Goettees paid all of the back taxes due, but asked for an abatement of the interest that had collected on the taxes due, which amounted to the following amounts:  1978: $65,336.10-- 1979: $36,456.54--  1981:  $4,689.52--  1982:  $13,243.89.   Following negotiations between the parties, the IRS decided to abate interest that had accrued between October 4, 1995 and November 20, 1996 because the Goettees had been given incorrect advice by the IRS during this time.  The IRS refused to abate the interest that accrued during any other periods.

At some point during the negotiations between the parties, the Goettees also submitted $40,000 to the IRS as part of an Offer in Compromise ("OIC") of their interest liability.  The IRS eventually rejected the OIC.

On December 6, 1996, the Goettees filed a timely petition with the Tax Court challenging the IRS's denial of the majority of their request for abatement. The IRS filed a motion for partial summary judgment, which the Tax Court granted, holding that the statute under which the Goettees sought relief did not apply to tax year 1978. Accordingly, the case continued to trial only with respect to abatement of interest concerning the taxable years 1979, 1981, and 1982.

At trial, the Goettees contended that interest abatement was warranted for two specific periods during which their delay in payment was attributable to improper action by the IRS: the 328 day period between December 2, 1993 and October 26, 1994 during which time the IRS was computing the tax due after it made the Barrister Books settlement offer to the Goettees, and the 139 day period between December 14, 1994 and May 2, 1995 during which time the IRS was processing the Goettees' signed settlement agreement.[1] The Goettees also requested that the Tax Court "order abatement for unspecified additional periods." J.A. at 563. The Tax Court ultimately held that the IRS abused its discretion in not abating interest for the period of January 25 through April 24, 1995. With respect to all other periods at issue, the Tax Court held that

---

[1]At trial, the IRS conceded that abatement of interest for one period of time - February 25 through April 25, 1995 - was appropriate.

the IRS did not abuse its discretion by not abating interest assessed against the taxpayers.

The Goettees filed a motion for reconsideration, which the Tax Court denied. In addition, they filed a motion for an award of reasonable litigation costs as a prevailing party in the amount of $59,735.09. The Tax Court also denied this motion. The Goettees timely appeal to this court the Tax Court Decision and Order, the rejection of their motion for reconsideration, and the rejection of their motion for an award of reasonable litigation costs.

II.

The Goettees first contend that the Tax Court erred in granting partial summary judgment to the IRS and dismissing the Goettees' claim for interest abatement for tax year 1978 from the suit. We reject this contention.

The Goettees filed their petition with the Tax Court seeking abatement of interest with respect to tax years 1978, 1979, 1981, and 1982. The Tax Court granted partial summary judgment to the IRS, dismissing the 1978 tax year from the suit. The Tax Court held that the Goettees' claim for abatement of interest sounded under 26 U.S.C. § 6404(e),[2] which only applies to tax years beginning after 1978. Tax Reform Act of 1986, Pub. L. No. 99-514,

_____

[2]All statutory citations are to Title 26 of the United States Code.

7

§ 1563(b), 100 Stat. 2085, 2762.  The Goettees argue that the Tax Court erred in not also assessing their claim under § 6404(a), which <u>would</u> apply to tax year 1978 and which authorizes the Service "to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which (1) is excessive in amount, or (2) is assessed after the expiration of the period of limitation properly applicable thereto, or (3) is erroneously or illegally assessed."  26 U.S.C. § 6404 (a).  This argument fails.

Both the statute and the applicable regulations indicate that § 6404(a) does not apply to income, estate, or gift taxes.  26 U.S.C. § 6404(b); Treas. Reg. § 301.6404-1(b).  Because the excess interest at issue is a liability "in respect of" an income tax assessment, and because income tax assessments are specifically barred from consideration, the Tax Court correctly refused to consider the Goettees' claim under Section 6404(a).  <u>Bax v. Comm'r</u>, 13 F.3d 54, 58 (2d Cir. 1993); <u>Asciutto v. Comm'r</u>, T.C. Memo 1992-564, n.5.  We therefore affirm the Tax Court's partial summary judgment dismissing the abatement claim for tax year 1978.[3]

---

[3]The Goettees also raise § 6402(a) in support of their claim relating to the 1978 tax year.  They, however, raise it for the first time in their reply brief.  Accordingly, the Goettees waived this argument because they did not raise it in their opening brief. <u>United States v. Jones</u>, 308 F.3d 425, 427 n.1 (4th Cir. 2002).

III.

The Goettees next argue that the Tax Court erred in holding that the Commissioner did not abuse his discretion in refusing to abate interest for the vast majority of the delay alleged by the Goettees. Specifically, they contend that (1) the IRS was obligated to abate interest for the 328 day period between December 2, 1993 and October 26, 1994 that it delayed in computing the tax due after it made the Barrister Books settlement offer to them; (2) the period of time between October 4, 1995 and November 20, 1996 that the IRS chose for the partial abatement period was incorrect; (3) the IRS was obligated to abate interest for the approximately 54 month period of time between May 1989 and November 1993 that it took to extend the Barrister Books settlement offer to them; and (4) the IRS was obligated to abate interest for the period of time between May 15, 1996 and January 1997 that it held the $40,000 deposit. We address all four contentions in turn.

A.

Before we discuss the Goettees' specific contentions, however, it is helpful to understand the statutory and regulatory context in which interest abatement operates. Interest on an unpaid federal tax liability accrues from the date that the payment is due until the date that the payment is made. § 6601(a). The Internal Revenue Code, however, provides a mechanism to abate interest when

9

the delay in making the tax payment results from unreasonable actions by the IRS.  Abatement of interest for unreasonable errors and delays by the IRS is controlled by § 6404(e), which, for the time period applicable to this case, stated in relevant part:

> (e) Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.
>
> (1) In general. In the case of any assessment of interest on  . . . any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, . . . the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

§ 6404(e)(1)(A) (1995).[4]

Even though § 6404(e) is phrased in the permissive ("the Secretary _may_ abate the assessment of all or any part of such interest"), the IRS does not have unfettered discretion in deciding whether to abate interest.  Once the taxpayer meets procedural requirements not relevant here, the Tax Court has the authority to overturn the IRS's decision not to abate interest if the taxpayer can demonstrate both that the delay resulted from unreasonable

---

[4]Congress later expanded 26 U.S.C. § 6404(e)(1) to allow the IRS to abate interest for an "unreasonable" error or delay in performing a "ministerial or managerial" act. Taxpayer Bill or Rights, Pub. L. No. 104-168, § 301, 110 Stat. 1452, 1457 (1996) (effective for tax years beginning after July 30, 1996). This amendment to § 6404(e) is inapplicable to this case.

delay by an IRS employee in performing a ministerial act and that the Commissioner abused its discretion in refusing to abate the interest. 26 U.S.C. § 6404(h).[5] The Treasury regulations in effect at the time relevant to this case defined a "ministerial act" as

> a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

Temp. Treas. Reg. § 301.6404-2T, 52 Fed. Reg. 30163 (Aug. 13, 1987). The regulations also provide examples of ministerial acts, which include: (1) the transfer of a case file to another IRS office after the taxpayer requested and the appropriate IRS officials approved the transfer and (2) the issuance of a notice of deficiency after the notice has been prepared and reviewed and all other prerequisites to issuance have been completed. Id. (Examples 1-2). Examples of acts that are not ministerial include: (1) the delay in processing a taxpayer's return caused by the IRS's need first to examine extensively a tax shelter in which the taxpayer invested; (2) a manager's decisions to send an employee to training and not to reassign the employee's cases during the training; and

---

[5]At the time the Goettees filed their petition, the operative jurisdictional statute was § 6404(g), which was predesignated § 6404(h) under the IRS Restructuring and Reform Act of 1998, effective for tax years ending after July 22, 1998. Pub. L. No. 105-206 § 3305(a), 112 Stat. 685.

11

(3) a decision to delay a planned examination of a taxpayer's return because of other work priorities and resource limitations. Id. (Examples 3-5).

Further, a taxpayer seeking interest abatement must go beyond simply alleging general delay by the IRS, and also identify "a specific period of time over which interest should be abated as a result of the error or delay." Donovan v. Comm'r, 80 T.C.M. (CCH) 78, 80 (2000).

To meet the burden of showing an abuse of discretion, the taxpayer must demonstrate that the IRS refusal to abate interest was made "arbitrarily, capriciously, or without sound basis in fact or law." Lee v. Comm'r, 113 T.C. 145, 149 (1999).

With this background in mind, we turn to the Goettee's specific contentions.


B.

The Goettees first contend that the Tax Court erred in holding that the IRS did not abuse its discretion in refusing to abate interest for the period of time between the decision to extend the Barristers Books settlement offer to taxpayers and the time when the Goettees actually received the offer.[6]  Specifically, the

---

[6]The IRS claims that the Goettees waived this argument by not raising it in the Tax Court.  After review of the record, we hold that the Goettees' arguments in the tax court concerning this issue were substantial enough to preserve it for appeal.  We consider the argument fully here.

12

Goettees contend that "[o]nce the decision was made by IRS to extend the offer to all Barrister Books investors, the actual transmittal of such an offer to each investor was a ministerial act." Appellant's Brief at 23. A review of the record, however, reveals that the Goettees vastly oversimplify the situation.

Winkler did testify in the Tax Court that Barrister Books settlement offers were to be made available to all eligible taxpayers. J.A. at 95. However, he immediately followed that statement by noting that only he and one other appeals officer would be available to work on the project. Id. Because he decided that making the settlement offers to everyone at once would be "very difficult" with only two agents working on the case, he decided to make the offers in small groups so as not to overwhelm resources. Id. In addition, Winkler testified that he stopped sending out settlement offers while he waited for the "Series 115 case" to be resolved by the Tax Court. Winkler anticipated that the IRS would prevail, and that its settlement position would be enhanced as a result. Id. at 241-42. In other words, the delay in sending out settlement offers resulted both from an administrative decision to not overwhelm limited IRS resources and from a strategic preference for offering the settlement from a position of strength.

Strategic litigation decisions are, almost by definition, not ministerial. See Lee, 113 T.C. at 150-51 (noting that an 11 year

13

delay resulting from litigation decisions was not a ministerial delay). In addition, delay resulting from the allocation of IRS resources is defined as non-ministerial according to the relevant regulations. Treas. Reg. § 301.6404- 2T(b)(2) (example 5) (1993). Accordingly, we affirm the Tax Court holding that the IRS did not abuse its discretion in holding that the 4 ½ year delay in sending the Barrister Books settlement offer to the Goettees was the result of non-ministerial actions and, therefore, not eligible for interest abatement pursuant to Section 6404(e).

## C.

The Goettees next argue that the Tax Court erred in holding that the IRS did not abuse its discretion in refusing to abate interest for the 328 days that elapsed between the Goettees accepting the Barrister Books settlement offer and the IRS informing them of the amount of tax that would be due. According to the Goettees, the mechanical act of computing the tax due and preparing a stipulation decision are ministerial acts which fall under the statute. While the Goettees correctly note that the computation of the tax and mailing of the letter are ministerial acts, J.A. at 574 (Tax Court finding), they fail to recognize that these acts were not the reason for the delay.

Specifically, the Tax Court found that "[i]t does not appear that there was any delay in [the ministerial acts of] preparing the

14

settlement documents and mailing them to petitioners." Id. at 575. Instead, the Tax Court found that the more than 300 day delay resulted from Rowland's "prioritization decisions." Id. at 572. As we have noted, Rowland handled the Barrister Books settlement offers in addition to her normal case load, which included cases with statutory deadlines. In view of this fact, the Tax Court "conclude[d] that Rowland's delay in beginning to process petitioners' response to the settlement offer is properly attributable to respondent's reasonable prioritization decisions, and thus is not attributable to error or delay in performing a ministerial act." Id. at 574.

Factual findings by the Tax Court can only be overturned upon a showing of clear error--which the Goettees do not make here. See Norfolk Southern Corp. v. Comm'r, 140 F.3d 240, 248 (4th Cir. 1998). The Goettees instead challenge the Tax Court's overall legal conclusion. They contend that allowing the IRS to delay in the performance of ministerial acts via "prioritization decisions" with non-ministerial acts will enable the agency to thwart the goals of § 6404(e). Unfortunately for the Goettees, the examples given in the applicable regulations are almost directly on point:

> Example 4. A revenue agent is sent to a training course, and the agent's supervisor decides not to reassign the agent's cases. During the training course, no work is done on the cases assigned to the agent. Neither the decision to send the agent to the training course nor the decision not to reassign the agent's cases is, under the circumstances, a ministerial act. Thus, interest attributable to the delay cannot be abated.

15

Example 5. A taxpayer who claimed a loss from a tax shelter on the taxpayer's income tax return is notified that the Internal Revenue Service intends to examine the return. However, because of other work priorities and resource limitations, a decision is made not to commence the examination for an extended period thereafter. The decision not to commence the examination involves the exercise of judgment and discretion and is not a ministerial act; consequently, interest attributable to the period of delay cannot be abated.

Temp. Treas. Reg. § 301.6404-2T, 52 Fed. Reg. 30163 (Aug. 13, 1987) (examples 4-5). As in examples 4 and 5, the allocation of scarce IRS resources that occurred here provides a valid reason for non-ministerial IRS delay. We find no meaningful distinction between the prioritization decisions discussed in examples 4 and 5 and the prioritization decisions in this case. Accordingly, we affirm the Tax Court on this claim.

### D.

The Goettees next contend that the dates that the IRS chose to abate interest in their case (10/04/95 to 09/20/96) were not linked to any actual events and were, therefore, an arbitrary and abusive use of IRS discretion. The Goettees want these dates extended to correlate to the date they first submitted their abatement request (09/05/95) and the date that the IRS acted to disallow the abatement claim (11/13/96). We reject this claim because the Goettees did not raise it until their motion for reconsideration pursuant to Rule 161 of the Rules of the United States Tax Court.

16

"The Tax Court has held that decisions interpreting Rules 59 and 60 of the Federal Rules of Civil Procedure apply to motions for reconsideration and further trial under Rule 161 of the Rules of the United States Tax Court." Estate of Kraus v. Comm'r, 875 F.2d 597, 602 (7th Cir. 1989) (citing Wheeler v. Comm'r, 46 T.C.M. (CCH) 642 (1983)). As in decisions under Rules 59 and 60 of the Federal Rules of Civil Procedure, the panel reviews the Tax Court's denial of a motion for reconsideration under the abuse of discretion standard. Id.

In this case, the Tax Court noted that

Petitioners did not ask us to consider at trial or on brief the specific time periods set forth in their motion that were allegedly confused or ignored by the Commissioner's Appeals Office during which errors or delays occurred that warrant abatement of interest. Instead, petitioners asked the Court, on answering brief, to order an abatement for additional unspecified time periods. In Goettee I we declined to do so. We do not now entertain petitioners' more detailed request. As we stated, supra, reconsideration is not the appropriate forum for offering new legal theories or rehashing previously rejected arguments to reach the desired result.

Goettee v. Comm'r, 87 T.C.M. (CCH) 808, 810 (2004). In other words, the Tax Court rejected this argument on motion for reconsideration because the Goettees could and should have raised this argument in a previous filing. Such rejections are common in Tax Court because "[r]econsideration under Rule 161 serves the limited purpose of correcting substantial errors of fact or law and allows the introduction of newly discovered evidence that the

17

moving party could not have introduced, by the exercise of due diligence, in the prior proceeding." <u>Estate of Quick v. Comm'r</u>, 110 T.C. 440, 441 (1998) (emphasis added). "Reconsideration is not the appropriate forum for . . . tendering new legal theories." <u>Id.</u> at 441-42. Accordingly, we hold that the Tax Court did not abuse its discretion in refusing to consider an argument on reconsideration that should have been raised at trial.

E.

The Goettees argue that the Tax Court erred in holding that IRS did not abuse its discretion in refusing to toll the accrual of interest for the period of time that the IRS held the Goettees' $40,000 submitted with the OIC. While this argument may hold some superficial appeal, the Tax Court clearly and concisely explained why the applicable statutes and regulations do not allow for interest abatement in such a case. We find this reasoning compelling and, accordingly, affirm the Tax Court on this issue.

The Goettees contend, in essence, that the IRS cannot charge them interest on a liability while the IRS is holding funds designated to pay that liability. This contention fails because it misapprehends the legal status of the money at issue. Because the Goettees submitted the check as part of an offer in compromise of a liability, the $40,000 is treated as a deposit, <u>not</u> as a payment of their tax liability. <u>See</u> <u>Keith v. Commissioner</u>, 35 T.C. 1130,

18

1136 (1961).  This was <u>not</u> money given to the IRS as a credit against the liability at issue.  This was instead a deposit, in the nature of a surety bond, that accompanied the Goettees' offer to settle the case.  <u>See</u> <u>Roseman v. United States</u>, 323 U.S. 658, 662 (1945).  There is no indication that the Goettees ever intended it to be applied to their outstanding liability.[7]  It was part of a separate transaction to settle the liability.  The effect of the $40,000 on the Goettees' accruing interest was, therefore, nonexistent.

Also, even if the $40,000 should have been applied to the liability, it still would not affect the Goettee's claim for abatement of interest.  The IRS procedures applicable at the relevant time indicate that "[t]he Service will allocate any remittance treated as a payment of tax to penalty or interest as designated by the taxpayer if the remittance exceeds the full amount of the underlying tax due. . . . If more than one period of tax is involved, the Service will allocate an undesignated remittance so as to satisfy all tax, penalty, and interest <u>for the earliest period before applying any excess to other periods.</u>"  Rev.

---

[7]The regulations applicable at the time confirm that money accompanying OICs is not normally meant to be applied to the liability at issue.  Specifically, they note that "[i]f an offer in compromise is withdrawn or rejected, the amount tendered with the offer . . . shall be refunded without interest, <u>unless the taxpayer has stated or agreed</u> that the amount tendered may be applied to the liability with respect to which the offer was submitted."  Treas. Reg. § 301.7122-1(d)(4) (1993) (emphasis added).

19

Proc. 84-58, 1985-48 I.R.B. 39, at 6.01 (emphasis added).  In this case, therefore, the entire $40,000--which was not designated to apply to any specific year--would be allocated against the liability for 1978--which was over $40,000 and over which the Tax Court does not have jurisdiction.  See, supra, Section II.[8]

F.

In short, we hold that the Tax Court did not err in holding that the IRS did not abuse its discretion in refusing to abate interest for all of the disputed periods at issue.

IV.

Finally, the Goettees appeal the Tax Court's refusal to award them reasonable litigation costs in this matter as a prevailing party.  Under § 7430, the prevailing party in any administrative or court proceeding in connection with the "determination, collection, or refund of any tax, interest, or penalty" may be awarded a judgment for reasonable administrative or litigation costs.  § 7430(a).  In order to receive an award of litigation costs, the taxpayer must (1) be the prevailing party; (2) have exhausted

---

[8]There does appear to be a four month period in which the IRS held the $40,000 after the Goettees withdrew the OIC.  This extra delay does not, however, address the underlying concern--that the $40,000 cannot be applied to abate the interest for the underlying debt.  The proper remedy (if any) for that four month delay is not the abatement that the Goettees request in this case.

20

available administrative remedies; (3) meet certain net-worth requirements; and (4) have not unreasonably protracted or delayed the proceedings. §§ 7430(a), b(1), b(3), c(4). Because this statute "renders the United States liable for attorney's fees for which it would not otherwise be liable, [it] amounts to a partial waiver of sovereign immunity [and] must be strictly construed in favor of the United States." Ardestani v. INS, 502 U.S. 129, 137 (1991). The panel reviews the Tax Court's denial of litigation costs under § 7430 for an abuse of discretion, "accord[ing] substantial deference to the reasoning of the Tax Court." Dang v. Comm'r, 259 F.3d 204, 208 (4th Cir. 2001).

The Tax Court in this case held that the Goettees were not a "prevailing party" at trial and, accordingly, did not reach the other requirements under § 7430. Essentially, the statute defines a "prevailing party" as one "which (I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented." § 7430(c)(4)(A)(I) (emphasis added). While refusing to establish a mathematical cutoff for "substantial," the Tax Court noted that the Goettees only prevailed with respect to three months of IRS delay, while the IRS prevailed with respect to almost 16 months of the alleged delay. J.A. at 691. In addition, the Court noted that the Goettees were only awarded "not quite 5 percent" of the amount of interest that they

21

claimed should be abated.  Id. at 695.  Taking these numbers into account, as well as the fact that there was no one dominating issue in this case on which the Goettees prevailed, the Tax Court held that the Goettees did not "substantially prevail" as to either the most significant issue or the amount in controversy in this case.

The Goettees contest this decision, contending that they prevailed with respect to the most significant issue--whether the IRS abused its discretion in refusing to abate interest.  Citing Wilkerson v. United States, 67 F.3d 112 (5th Cir. 1995), and Huckaby v. United States Dep't. of Treasury, 804 F.2d 297 (5th Cir. 1986), the Goettees argue that "substantially prevailing" presents a yes or no question--not a question that lends itself to degrees of difference.  Once the IRS admitted that it had abused its discretion, according to the Goettees, they "substantially prevailed" as a matter of law.  We disagree.

As the Tax Court held, the cases on which the Goettees rely are distinguishable from this case.  In both Wilkerson and Huckaby, the Fifth Circuit did note that one does not need to prevail on the majority of the issues presented in order to satisfy the "substantially prevail" test.  However, unlike those cases, in which a central issue dominated the proceedings, this case represented a series of claims of delay against the IRS, only a very few of which actually bore fruit at trial.  The Goettees actually raised a series of individual--and unrelated--claims of

22

delay against the IRS, requesting abatement for each individual claim. The parties, by stipulation, chose to conflate these individual disputes into one abuse of discretion issue in the Tax Court. J.A. at 694. This conflation, however, does not change the fact that, at heart, this case presented a series of claims against the IRS, the vast majority of which were determined in the IRS's favor in the Tax Court. There was simply no central issue in this case, as there was in Wilkerson and Huckaby, upon which either of the parties could "substantially prevail," notwithstanding the remainder of the litigation.

In short, this issue, as noted above, falls squarely within the discretion of the Tax Court, which has witnessed these proceedings from the beginning and has carefully weighed the interplay between the parties' stipulations, what was actually at issue, and who actually prevailed. J.A. at 694. We hold that the Tax Court did not abuse its discretion in refusing to award the Goettees reasonable litigation costs.

V.

For all of the foregoing reasons, the Decision and Order of the Tax Court is

AFFIRMED.[9]

_____

[9]The parties agree that there is a typographical error in the Tax Court's June 1, 2005 order.  Specifically, the Tax Court decided that interest should be abated for the period <u>January 25</u> though April 24, 1995.  The June 1, 2005 order, however, states that interest should be abated for the period <u>February 24</u> through April 24, 1995.  The parties also agree that the dollar amounts stated in the June 1, 2005 order correctly reflect the underlying decision.  The typographical error, therefore, is harmless.  We leave to the Tax Court's discretion whether to correct this harmless error.