# United States Tax Court

T.C. Memo. 2024-57

SARAH S. O'NAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 5115-17.                          Filed May 15, 2024.

———————

*Harlan S. Louis*, for petitioner.

*Lauren M. Dynes*, *Jonathan E. Behrens*, and *Richard L. Wooldridge*, for respondent.

## MEMORANDUM OPINION

COPELAND, *Judge*: Petitioner, Sarah S. O'Nan, petitioned this Court after the Commissioner of Internal Revenue (Commissioner) granted her innocent spouse relief under section 6015(f)[1] but denied her request for refund of $123,200 under section 6015(g)(1). Following trial, we held that the Commissioner must refund Mrs. O'Nan all but $3,340 (plus interest) of her requested amount. *O'Nan v. Commissioner*, T.C. Memo. 2023-117, at *13. Mrs. O'Nan then timely filed a Motion for Reasonable Litigation or Administrative Costs (Motion) pursuant to section 7430 and Rule 231. We must now decide whether Mrs. O'Nan

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

[*2] qualifies under section 7430 for an award from the United States of any or all of her legal or administrative costs.

*Background*

The following facts are derived from our previous Opinion in this case, the parties' pleadings, the Stipulation of Facts, Mrs. O'Nan's Motion, and the Commissioner's Response to the Motion. Mrs. O'Nan resided in Ohio when she filed her Petition.

I.   *Facts and Holdings*

Mrs. O'Nan was married to Jonathan P. O'Nan until his death on November 25, 2014. In May 2012 the O'Nans bought a home in Ohio (family home). The deed conveyed legal title to the O'Nans in joint tenancy with right of survivorship, referred to in Ohio law as a "survivorship tenancy." *See* Ohio Rev. Code Ann. § 5302.20(A) (LexisNexis 2022). The family home was eventually encumbered by two mortgages, each securing a different loan evidenced by a promissory note. Wells Fargo Bank (Wells Fargo) held the primary mortgage, initially recorded by WCS Lending, LLC, in a deed filed in October 2012 and assigned to Wells Fargo in January 2015. First Bexley Bank (First Bexley) held the secondary mortgage, recorded in a deed filed in October 2013. While both Mr. and Mrs. O'Nan signed the two mortgage deeds, only Mr. O'Nan signed the promissory note secured by the primary mortgage (subsequently assigned to Wells Fargo). The record does not indicate whether Mr. and Mrs. O'Nan cosigned the First Bexley note or whether instead only one of them did so.

The O'Nans jointly and timely filed their federal income tax returns for 2012 and 2013 (years in issue), but they did not pay their reported tax liabilities upon filing. The Internal Revenue Service (IRS) assessed the reported liabilities for the two years in issue on November 18, 2013, and November 17, 2014, respectively, while Mr. O'Nan was still living. After issuing a notice and demand for each tax year, the IRS filed a notice of federal tax lien (NFTL) against the O'Nans on April 28, 2015, and sent them a notice of NFTL filing that same day. The notice of NFTL filing stated that the O'Nans owed $24,683 and $90,108 for 2012 and 2013, respectively.

In June 2015 Mrs. O'Nan sold the family home for $895,000. The title company presiding over the sale remitted the following pertinent amounts from the sale proceeds: (1) $14,290 in closing costs; (2) $423,020 to Wells Fargo in full satisfaction of its primary loan; (3) $257,955 to

[*3] First Bexley in full satisfaction of its secondary loan; (4) $123,200 to the IRS in full satisfaction of its tax lien, i.e., the outstanding tax liabilities for the years in issue plus interest and penalties (IRS lien payment); and (5) $76,535 to Mrs. O'Nan.

On May 6, 2015, before the home sale occurred, the IRS had received from Mrs. O'Nan Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint liability with Mr. O'Nan for the years in issue. In a final determination letter dated February 13, 2017, the IRS, acting pursuant to section 6015(f), granted Mrs. O'Nan partial relief from joint and several liability for 2012 and full relief for 2013. For tax year 2012 the IRS determined that Mrs. O'Nan remained liable for $3,340. The determination letter also fully denied Mrs. O'Nan's claim for refund of the $123,200 IRS lien payment.

Mrs. O'Nan then filed her Petition contesting the refund denial. Following trial, we found and held the following:

1. Mrs. O'Nan inherited Mr. O'Nan's former one-half interest in the family home fully subject to the IRS's lien. *O'Nan*, T.C. Memo. 2023-117, at *7.

2. When a requesting spouse is granted section 6015(f) relief, we recalculate her federal tax liability as if she and her spouse (or deceased spouse) had filed married-filing-separately returns for the relevant years. *O'Nan*, T.C. Memo. 2023-117, at *8 (citing *Pullins v. Commissioner*, 136 T.C. 432, 440 (2011)).

3. In light of Mrs. O'Nan's section 6015(f) relief, the IRS's lien on the family home did not encumber her original one-half interest in the family home except to the extent of $3,340 plus interest. *O'Nan*, T.C. Memo. 2023-117, at *8.

4. Under Ohio law governing survivorship tenancies, there was a total of $447,500 (i.e., one-half of $895,000) of sale proceeds attributable to Mr. O'Nan's former one-half interest out of which to satisfy the liabilities encumbering it. *Id.* at *9.

5. Since Mrs. O'Nan signed the Wells Fargo mortgage deed but not the promissory note, under Ohio law she was only a surety for Mr. O'Nan's obligation under the note. *Id.* at *10.

**[\*4]** 6. Since the closing costs were split equally between Mr. and Mrs. O'Nan's interests, and since Wells Fargo held priority over both First Bexley and the IRS, only $17,335 of proceeds attributable to Mr. O'Nan's former one-half interest remained for First Bexley and the IRS after Wells Fargo's satisfaction. *Id.* at \*12.

7. By a preponderance of the evidence, Mrs. O'Nan was not the sole signer of the First Bexley promissory note. Therefore, since First Bexley had priority over the IRS, none of the IRS lien payment could have come from proceeds attributable to Mr. O'Nan's former one-half interest. *Id.* at \*12–13.

8. Therefore, the entire IRS lien payment came from Mrs. O'Nan's separate funds. Pursuant to section 6015(g)(1), she must be refunded all but $3,340 plus interest. *O'Nan*, T.C. Memo. 2023-117, at \*13.

II.    *The Parties' Administrative and Litigation Positions*

On February 13, 2017, the IRS Office of Appeals[2] issued its final determination letter regarding Mrs. O'Nan's innocent spouse relief request. That letter granted Mrs. O'Nan partial relief for 2012 and full relief for 2013 but stated:

> Your refund isn't allowed under the Internal Revenue Code (the Code). We can't refund your payments or credits if you filed your claim for relief more than 2 years after you paid the tax, unless you filed your claim within three years of the date you filed your return (Section 6511 of the Code). Refunds are not available for:
>
> - Payments made with the joint return
> - Joint payments
> - Payments made solely by the other spouse
> - A joint overpayment from another tax year that was applied to this debt (unless you establish that you

---

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the IRS Office of Appeals.

[*5]     provided some or all of the funds for the overpayment)[.]

In her Petition, filed March 2, 2017, Mrs. O'Nan contended (in relevant part):

[T]he lien recorded by the IRS in April 2015 was improper. It was not timely. It was for the tax obligation of another person [i.e., Mr. O'Nan].

. . . .

According to the IRS, the 2013 assessment was made on November 17, 2014. By law, the earliest that the IRS's automatic lien can arise is ten days after the assessment (November 27, 2014). Jonathan P. O'Nan ("Jon") died tragically on November 25, 2014. Upon Jon's death, their home immediately transferred to Petitioner Sarah S. O'Nan ("Sarah") by operation of law. So by November 27, 2014, the home was no longer Jon's property, and therefore, it was not available for an automatic lien. . . . Sarah is deemed to be an innocent spouse. Therefore, her home equity is not available to pay the tax debts of her former husband. . . .

Even though the 2012 taxes were assessed and noticed while Jon was alive, the lien was improper because by the time it was recorded, Sarah (an innocent spouse) was the sole owner of the property. Even if the lien had been recorded prior to Jon's death, the automatic transfer at his death would have defeated the lien. A tax lien recorded against only the deceased spouse does not survive the death of the taxpayer.

On April 24, 2019, the Commissioner filed a Motion for Partial Summary Judgment, asking the Court to rule on Mrs. O'Nan's argument that a section 6321 lien arises (at the earliest) ten days after assessment rather than immediately upon assessment (lien argument). By Order issued June 18, 2020, we granted partial summary judgment to the Commissioner, ruling that the IRS's section 6321 lien on Mr. O'Nan's one-half interest in the family home arose on November 17, 2014 (i.e., the date of assessment). We further indicated that under Ohio law the lien was not extinguished upon Mr. O'Nan's death.

**[\*6]** In a letter dated June 24, 2020, and addressed to the Commissioner's counsel in this case, counsel for Mrs. O'Nan, Harlan S. Louis, proposed a settlement of the case and supported the proposal as follows (in relevant part):

> The partial summary judgment still leaves open our contention that the IRS wrongfully took the home sale proceeds from the equity share of Sarah to pay the tax debt of someone else (Jon). During Jon's life, Sarah and Jon each owned a one-half interest in the real estate. As we discussed last week, the Wells Fargo promissory note was in Jon's name alone. At the closing, Wells Fargo was paid $423,019.92. This essentially wiped out all of the equity in Jon's share. So, when the IRS got paid $123,200.00, this all came from Sarah's share. But since Sarah is an *Innocent Spouse*, her assets are not available to pay Jon's tax debt.

This letter was the first time Mrs. O'Nan conveyed to the Commissioner her argument that the equity in Mr. O'Nan's former one-half interest was insufficient to account for the entire IRS lien payment (equity argument). Mr. Louis repeated the equity argument in substantially the same form in a settlement proposal dated January 11, 2021, and addressed to the Commissioner's counsel in this case, adding the following explanation:

> The facts are simply these: The foreclosure sales price was $895,000. Attributing that 50% to Jon's interest yields $447,500. The pay-off of Wells Fargo leaves only $24,480 in Jon's share to pay debts including those having priority well before the IRS. <u>So, the $123,200 the IRS received that day came from Sarah—not from Jon.</u>

(Footnote omitted.) Also on January 11, 2021, Mrs. O'Nan filed her Pretrial Memorandum, which stated the following (in relevant part):

> [T]he IRS was paid $123,200.00 from Sarah's property— and <u>not</u> Jon's property. . . .
>
> . . . .
>
> On September 24, 2012, Jonathan P. O'Nan, as the sole Borrower, signed a Promissory Note promising to pay

**[\*7]** $412,300.00 to WCS Lending LLC (the "Wells Fargo Note").

. . . .

*BancOhio Nat'l Bank v. Powers*, 1990 Ohio App. LEXIS 4689 (10th Dist. Franklin Cty., Oct. 25, 1990). A spouse (including a former spouse) has no obligation to pay the debts of her spouse, including a promissory note not signed by her.

The Commissioner rejected the equity argument in his Pretrial Memorandum, at trial, and in his posttrial briefs. For instance, in his Pretrial Memorandum he asserted that "Petitioner's interest in the family home was what remained *after* satisfaction of the mortgages and respondent's liens." Likewise, in his Simultaneous Opening Brief he wrote:

Because respondent's lien interests in the property were fully vested and protected under federal and state law, petitioner only possessed an equity interest in the property at issue to the extent that the sale price of the home exceeded the value of the mortgage loans and respondent's vested lien interests, and petitioner did not provide the funds totaling $123,200 applied in satisfaction of the 2012 and 2013 liabilities.

In his Simultaneous Answering Brief, the Commissioner cited *Cardinal Financial Co., L.P. v. Filgueiras*, No. L-18-1211, 2019 WL 2246074 (Ohio Ct. App. May 24, 2019), for the proposition that "[b]ecause petitioner signed the Wells Fargo Mortgage, that mortgage encumbered the interest in the property at issue [i.e., the family home] which vested with petitioner upon Mr. O'Nan's death."

III.    *Settlement Proposals*

Mr. Louis sent four settlement proposals to the Commissioner's counsel during the course of this litigation. The first three proposals were mailed and dated June 11, 2019, June 24, 2020, and January 11, 2021, respectively. The subject line of each letter read: "Settlement Proposal (CONFIDENTIAL UNDER RULE 408) Sarah S. O'Nan v. Commissioner, Tax Court Case No. 5115-17." Mr. Louis sent the fourth proposal by email on February 1, 2021, with substantially the same subject line.

**[*8]**    The first proposal stated in part: "We propose that the IRS re-pay to Sarah the sum of $92,400, plus interest.  In turn, Sarah will agree to dismiss the pending Tax Court case with prejudice."   The second proposal stated in part: "[W]e propose that from the $123,200 taken, the IRS pay back to Sarah $92,400, plus interest.  In turn, Sarah will agree to dismiss the pending case with prejudice."  The third proposal stated in part: "[W]e propose that from the $123,200 foreclosure sale proceeds received by the IRS, your client pay back to Sarah a settlement payment of $85,000, plus interest.   In turn, Sarah will agree to dismiss the pending case with prejudice."  The fourth proposal stated in part:

> On the high side, we propose that if the verdict at trial provides for a payment to Sarah in excess of $90,000, we agree to cap that award at $90,000, plus interest.  On the low side, we propose that if the verdict at trial provides for a payment to Sarah less than $50,000 (including an IRS win with no payment to Sarah), we agree to set a floor payment to Sarah of $50,000, plus interest.  And so, if the court were to award Sarah an amount between $50,000 and $90,000, the parties would accept that amount.

There is no evidence that the Commissioner's counsel accepted any of the proposals, none of which references section 7430 or includes the phrase "qualified offer."

IV.    *Request for Award*

After we heard this case and issued our original Opinion, Mrs. O'Nan requested an award under section 7430 of $86,956.21, comprising $86,810.50 of attorney's fees and $145.71 of costs (e.g., court filing fees and postage).  Mrs. O'Nan incurred the attorney's fees on account of work performed by Mr. Louis's firm, Bailey Cavalieri, LLC, between March 2015 and September 2023.  The attorney's fees were charged at rates ranging from $155 per hour to $440 per hour, depending on the position of the person at Bailey Cavalieri, LLC, performing the work.

*Discussion*

I.    *Section 7430 Overview*

Section 7430 provides for the award of litigation or administrative costs to a taxpayer in a proceeding brought by or against the United States involving the determination, collection, or refund of any tax, interest, or penalty.  An award may be made where the taxpayer can

**[\*9]** demonstrate that she (1) is the "prevailing party," (2) exhausted administrative remedies within the IRS,[3] (3) did not unreasonably protract the proceeding, and (4) has claimed "reasonable" costs. I.R.C. § 7430(a), (b)(1), (3), (c)(1) and (2); *Bryan S. Alterman Tr. v. Commissioner*, 146 T.C. 226, 227 (2016). The taxpayer bears the burden of proving that these requirements are met. Rule 232(e). The requirements are conjunctive; failure to satisfy any one of them precludes an award. *Alterman Tr.*, 146 T.C. at 227; *Minahan v. Commissioner*, 88 T.C. 492, 497 (1987). The decision to award fees is within the sound discretion of the Court. *See William L. Comer Fam. Equity Pure Tr. v. Commissioner*, 958 F.2d 136, 139 (6th Cir. 1992) (per curiam) (adopting an abuse of discretion standard for review of the Tax Court's decisions under section 7430), *aff'g* T.C. Memo. 1990-316. An award of administrative costs may include only costs incurred on or after the earliest of (1) the date the taxpayer received the notice of the decision of the IRS Office of Appeals, (2) the date of the notice of deficiency (if applicable), or (3) the sending date of the first letter of proposed deficiency providing an opportunity for administrative review (if applicable). I.R.C. § 7430(c)(2). For these purposes, the notice of the decision of the IRS Office of Appeals is the final written document, mailed or delivered to the taxpayer, that is signed by an individual in the Office of Appeals who has been delegated the authority to settle the dispute on behalf of the Commissioner, and states or indicates that the notice is the final determination of the entire case. Treas. Reg. § 301.7430-3(c)(2). Moreover, a final notice of determination denying innocent spouse relief is treated as a notice of deficiency for these purposes. *Id.* subpara. (3).

Section 7430(c)(4)(A) specifies that an individual taxpayer is the "prevailing party" if she (1) substantially prevailed with respect to either the amount in controversy or the most significant issue (or set of issues) presented and (2) had a net worth not in excess of $2 million at the time she filed her petition. *Alterman Tr.*, 146 T.C. at 228; Treas. Reg. § 301.7430-5(g)(1). However, even if the taxpayer meets these requirements, she will not be treated as the prevailing party if the Commissioner establishes that his position in the proceeding was "substantially justified." I.R.C. § 7430(c)(4)(B)(i). The Commissioner bears the burden of proof on this issue. *Id.*; Rule 232(e). "Substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." *Comer Fam.*

---

[3] This requirement applies only to claims for litigation costs. *See* I.R.C. § 7430(b)(1).

**[*10]** *Equity Pure Tr. v. Commissioner*, 958 F.2d at 139–40 (quoting *Pierce v. Underwood*, 487 U.S. 552, 563–65 (1988)); *Swanson v. Commissioner*, 106 T.C. 76, 86 (1996) (quoting *Underwood*, 487 U.S. at 565). The Commissioner's position in litigation is generally established at the time he files his answer to the taxpayer's petition. *See* I.R.C. § 7430(c)(7)(A); *Maggie Mgmt. Co. v. Commissioner*, 108 T.C. 430, 442 (1997). The Commissioner's position in an administrative proceeding is established as of the earlier of (1) the date of receipt of the notice of decision of the IRS Office of Appeals or (2) the date of the notice of deficiency (if applicable). I.R.C. § 7430(c)(7)(B); *see also Maggie Mgmt. Co.*, 108 T.C. at 442 ("The 'not substantially justified' standard is applied as of the separate dates that respondent took positions, first in the administrative proceedings and afterwards in the proceedings in this Court.").

If the taxpayer did not substantially prevail in litigation, or if the Commissioner's position was substantially justified, the taxpayer will still be treated as the prevailing party if the court's determination of her tax liability (determined without regard to interest) is equal to or less than the liability amount for which she offered to settle in a "qualified offer." I.R.C. § 7430(c)(4)(E). Section 7430(g) defines a qualified offer as a written offer that (1) the taxpayer makes to the Commissioner during the qualified offer period (beginning on the sending date of the first letter of proposed deficiency offering administrative review and ending 30 days before the date the case is first set for trial), (2) specifies the offered amount of the taxpayer's liability (determined without regard to interest), (3) is designated at the time it is made as a qualified offer for purposes of section 7430, and (4) remains open during the period beginning on the date the offer is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the offer is made. However, the taxpayer may not be treated as the prevailing party on account of a qualified offer if the court's judgment is entered pursuant to a settlement or if "the amount of tax liability is not in issue" in the proceeding. I.R.C. § 7430(c)(4)(E)(ii).

II.    *Administrative Costs Incurred Before February 13, 2017*

As a preliminary matter, we note that Mrs. O'Nan has included in her Motion a request for several thousand dollars' worth of administrative costs incurred before February 13, 2017, the date the IRS Office of Appeals issued its final determination letter regarding her innocent spouse relief request and request for refund. Regardless of whether Mrs. O'Nan otherwise qualifies for an award under

**[\*11]** section 7430, she may not recover administrative costs incurred before the date of the final determination letter. *See* I.R.C. § 7430(c)(2); Treas. Reg. § 301.7430-3(c).

III.   *Mrs. O'Nan's Settlement Proposals*

The Commissioner has conceded that Mrs. O'Nan substantially prevailed in this case, that her net worth did not exceed $2 million when she filed her Petition, that she exhausted her administrative remedies, and that she did not unreasonably protract the proceedings. Thus, if any of Mrs. O'Nan's settlement proposals was a qualified offer, we may award her administrative and litigation costs even if the Commissioner's position was substantially justified. *See* I.R.C. § 7430(c)(4)(E)(i).

However, the qualified offer provisions do not apply to "any proceeding in which the amount of tax liability is not in issue." I.R.C. § 7430(c)(4)(E). This case was instituted to dispute the Commissioner's refusal to provide a refund of amounts taken to satisfy the undisputed tax liability of a third party (viz, Mr. O'Nan). Mrs. O'Nan's tax liability was not in issue during the IRS or Court proceedings; in particular, she never contested the Commissioner's partial denial of innocent spouse relief for 2012. Moreover, Mr. O'Nan was not a party to these proceedings, and in any event his own tax liability was never contested. Therefore, no "amount of tax liability" was "in issue" when Mrs. O'Nan brought her refund request before the IRS and then before this Court.

Even if we assume that the qualified offer provisions apply to these proceedings, Mrs. O'Nan's settlement proposals did not satisfy all the procedural requirements under the statute. Specifically, none of her proposals gave any indication that it purported to be a qualified offer for purposes of section 7430. None of the proposals used the term "qualified offer" or "7430," nor did any of them indicate that Mrs. O'Nan would seek an award of administrative or litigation costs should it not be accepted. *See* I.R.C. § 7430(g)(1)(C) ("The term 'qualified offer' means a written offer which . . . is designated at the time it is made as a qualified offer *for purposes of this section* . . . ." (Emphasis added.)); *McGowan v. Commissioner*, T.C. Memo. 2005-80, 89 T.C.M. (CCH) 1044, 1045; *Downing v. Commissioner*, T.C. Memo. 2005-73, 89 T.C.M. (CCH) 1009, 1016–17, *supplementing* T.C. Memo. 2003-347.

Therefore, we hold that none of the settlement proposals was a qualified offer under section 7430, and we must inquire further to

[*12] determine whether litigation or administrative costs may be awarded to Mrs. O'Nan.

IV.   *Substantial Justification*

Because no qualified offer was made, and in light of the Commissioner's concessions, our disposition of Mrs. O'Nan's Motion hinges on whether the Commissioner's position during the proceedings was "substantially justified." *See* I.R.C. § 7430(c)(4)(B)(i).  Until June 24, 2020 (at the earliest), Mrs. O'Nan's only determinative contention in this matter was the lien argument, viz, that the section 6321 lien did not arise until Mr. O'Nan died and therefore never attached to his interest in the family home (or, alternatively, that the lien was extinguished upon Mr. O'Nan's death).  As indicated in our Order of June 18, 2020, granting partial summary judgment to the Commissioner, the Commissioner was fully justified in rejecting the lien argument, given applicable statutory text and caselaw.

Only after our partial summary judgment ruling did Mrs. O'Nan raise the equity argument, viz, that the equity in Mr. O'Nan's former one-half interest in the family home was insufficient to account for the entire IRS lien payment.  The equity argument presupposes that when a section 6321 lien attaches to property jointly owned by two spouses and one spouse is subsequently granted innocent spouse relief for some or all of the tax liability secured by the lien, the lien then encumbers the relieved spouse's interest in the property only to the extent of the liability (if any) for which she was not granted relief.  *See O'Nan*, T.C. Memo. 2023-117, at *8.  We are not aware of any statute, regulation, or judicial decision that either articulated or clearly implied this point of law before our original Opinion in this case.  Nor can we say that the Commissioner's response to the equity argument—viz, that an earlier-arising section 6321 lien is unaffected by a grant of innocent spouse relief—was not justified to a degree that could satisfy a reasonable person.  *See Swanson*, 106 T.C. at 86.

This Court and other courts have consistently held the Commissioner's position to be substantially justified, for purposes of section 7430(c)(4)(B)(i), when his position addressed a question of first impression that was not clearly settled by existing statutes or regulations.  *See, e.g.*, *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993); *Castillo v. Commissioner*, No. 18336-19L, 160 T.C., slip op. at 6 (June 5, 2023); *Estate of Wall v. Commissioner*, 102 T.C. 391, 394 (1994) ("This was a case of first impression, and respondent's

**[*13]** position was not contrary to any published decision. Nor could a reasonable person say that it lacked colorable justification."), *supplementing* 101 T.C. 300 (1993); *Bontrager v. Commissioner*, T.C. Memo. 2019-45, at *6 ("The Commissioner generally is not subject to an award of litigation costs under section 7430 where the underlying issue is one of first impression." (quoting *Rowe v. Commissioner*, T.C. Memo. 2002-136, 83 T.C.M. (CCH) 1762, 1769–70)); *Blanco Invs. & Land, Ltd. v. Commissioner*, T.C. Memo. 1988-175, 55 T.C.M. (CCH) 677, 678 (holding the Commissioner's position substantially justified when the question at issue was one of first impression and the relevant statute "is vague and gives little direction for deciding [the question at issue]").

Since the Commissioner's position was substantially justified throughout the administrative and Court proceedings, we will deny Mrs. O'Nan's Motion.[4]

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[4] We do not reach the Commissioner's argument that the amount of legal fees claimed by Mrs. O'Nan's is not "reasonable." *See* I.R.C. § 7430(c)(1) and (2).